FILED

2023 Feb-15  PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

134 STAT. 4604          PUBLIC LAW 116–283—JAN. 1, 2021

Corporate
Transparency
Act.

# TITLE LXIV—ESTABLISHING BENE-FICIAL OWNERSHIP INFORMATION REPORTING REQUIREMENTS

Sec. 6401. Short title.
Sec. 6402. Sense of Congress.
Sec. 6403. Beneficial ownership information reporting requirements.

31 USC 5301
note.

**SEC. 6401. SHORT TITLE.**

This title may be cited as the "Corporate Transparency Act".

31 USC 5336
note.

**SEC. 6402. SENSE OF CONGRESS.**

It is the sense of Congress that—

(1) more than 2,000,000 corporations and limited liability companies are being formed under the laws of the States each year;

(2) most or all States do not require information about the beneficial owners of the corporations, limited liability companies, or other similar entities formed under the laws of the State;

(3) malign actors seek to conceal their ownership of corporations, limited liability companies, or other similar entities in the United States to facilitate illicit activity, including money laundering, the financing of terrorism, proliferation financing, serious tax fraud, human and drug trafficking, counterfeiting, piracy, securities fraud, financial fraud, and acts of foreign corruption, harming the national security interests of the United States and allies of the United States;

(4) money launderers and others involved in commercial activity intentionally conduct transactions through corporate structures in order to evade detection, and may layer such structures, much like Russian nesting "Matryoshka" dolls, across various secretive jurisdictions such that each time an investigator obtains ownership records for a domestic or foreign entity, the newly identified entity is yet another corporate entity, necessitating a repeat of the same process;

(5) Federal legislation providing for the collection of beneficial ownership information for corporations, limited liability companies, or other similar entities formed under the laws of the States is needed to—

(A) set a clear, Federal standard for incorporation practices;

(B) protect vital Unites States national security interests;

(C) protect interstate and foreign commerce;

(D) better enable critical national security, intelligence, and law enforcement efforts to counter money laundering, the financing of terrorism, and other illicit activity; and

(E) bring the United States into compliance with international anti-money laundering and countering the financing of terrorism standards;

(6) beneficial ownership information collected under the amendments made by this title is sensitive information and will be directly available only to authorized government authorities, subject to effective safeguards and controls, to—

PUBLIC LAW 116–283—JAN. 1, 2021         134 STAT. 4605

(A) facilitate important national security, intelligence, and law enforcement activities; and

(B) confirm beneficial ownership information provided to financial institutions to facilitate the compliance of the financial institutions with anti-money laundering, countering the financing of terrorism, and customer due diligence requirements under applicable law;

(7) consistent with applicable law, the Secretary of the Treasury shall—

(A) maintain the information described in paragraph (1) in a secure, nonpublic database, using information security methods and techniques that are appropriate to protect nonclassified information systems at the highest security level; and

(B) take all steps, including regular auditing, to ensure that government authorities accessing beneficial ownership information do so only for authorized purposes consistent with this title; and

(8) in prescribing regulations to provide for the reporting of beneficial ownership information, the Secretary shall, to the greatest extent practicable consistent with the purposes of this title—

(A) seek to minimize burdens on reporting companies associated with the collection of beneficial ownership information;

(B) provide clarity to reporting companies concerning the identification of their beneficial owners; and

(C) collect information in a form and manner that is reasonably designed to generate a database that is highly useful to national security, intelligence, and law enforcement agencies and Federal functional regulators.

### SEC. 6403. BENEFICIAL OWNERSHIP INFORMATION REPORTING REQUIREMENTS.

(a) IN GENERAL.—Subchapter II of chapter 53 of title 31, United States Code, as amended by sections 6306(a)(1), 6307(a), and 6313(a) of this division, is amended by adding at the end the following:

### "§ 5336. Beneficial ownership information reporting requirements

31 USC 5336.

"(a) DEFINITIONS.—In this section:

"(1) ACCEPTABLE IDENTIFICATION DOCUMENT.—The term 'acceptable identification document' means, with respect to an individual—

"(A) a nonexpired passport issued by the United States;

"(B) a nonexpired identification document issued by a State, local government, or Indian Tribe to the individual acting for the purpose of identification of that individual;

"(C) a nonexpired driver's license issued by a State; or

"(D) if the individual does not have a document described in subparagraph (A), (B), or (C), a nonexpired passport issued by a foreign government.

"(2) APPLICANT.—The term 'applicant' means any individual who—

"(A) files an application to form a corporation, limited liability company, or other similar entity under the laws of a State or Indian Tribe; or

"(B) registers or files an application to register a corporation, limited liability company, or other similar entity formed under the laws of a foreign country to do business in the United States by filing a document with the secretary of state or similar office under the laws of a State or Indian Tribe.

"(3) BENEFICIAL OWNER.—The term 'beneficial owner'—

"(A) means, with respect to an entity, an individual who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise—

"(i) exercises substantial control over the entity; or

"(ii) owns or controls not less than 25 percent of the ownership interests of the entity; and

"(B) does not include—

"(i) a minor child, as defined in the State in which the entity is formed, if the information of the parent or guardian of the minor child is reported in accordance with this section;

"(ii) an individual acting as a nominee, intermediary, custodian, or agent on behalf of another individual;

"(iii) an individual acting solely as an employee of a corporation, limited liability company, or other similar entity and whose control over or economic benefits from such entity is derived solely from the employment status of the person;

"(iv) an individual whose only interest in a corporation, limited liability company, or other similar entity is through a right of inheritance; or

"(v) a creditor of a corporation, limited liability company, or other similar entity, unless the creditor meets the requirements of subparagraph (A).

"(4) DIRECTOR.—The term 'Director' means the Director of FinCEN.

"(5) FINCEN.—The term 'FinCEN' means the Financial Crimes Enforcement Network of the Department of the Treasury.

"(6) FINCEN IDENTIFIER.—The term 'FinCEN identifier' means the unique identifying number assigned by FinCEN to a person under this section.

"(7) FOREIGN PERSON.—The term 'foreign person' means a person who is not a United States person, as defined in section 7701(a) of the Internal Revenue Code of 1986.

"(8) INDIAN TRIBE.—The term 'Indian Tribe' has the meaning given the term 'Indian tribe' in section 102 of the Federally Recognized Indian Tribe List Act of 1994 (25 U.S.C. 5130).

"(9) LAWFULLY ADMITTED FOR PERMANENT RESIDENCE.—The term 'lawfully admitted for permanent residence' has the meaning given the term in section 101(a) of the Immigration and Nationality Act (8 U.S.C. 1101(a)).

"(10) POOLED INVESTMENT VEHICLE.—The term 'pooled investment vehicle' means—

"(A) any investment company, as defined in section 3(a) of the Investment Company Act of 1940 (15 U.S.C. 80a–3(a)); or

"(B) any company that—

"(i) would be an investment company under that section but for the exclusion provided from that definition by paragraph (1) or (7) of section 3(c) of that Act (15 U.S.C. 80a–3(c)); and

"(ii) is identified by its legal name by the applicable investment adviser in its Form ADV (or successor form) filed with the Securities and Exchange Commission.

"(11) REPORTING COMPANY.—The term 'reporting company'—

"(A) means a corporation, limited liability company, or other similar entity that is—

"(i) created by the filing of a document with a secretary of state or a similar office under the law of a State or Indian Tribe; or

"(ii) formed under the law of a foreign country and registered to do business in the United States by the filing of a document with a secretary of state or a similar office under the laws of a State or Indian Tribe; and

"(B) does not include—

"(i) an issuer—

"(I) of a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l); or

"(II) that is required to file supplementary and periodic information under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o(d));

"(ii) an entity—

"(I) established under the laws of the United States, an Indian Tribe, a State, or a political subdivision of a State, or under an interstate compact between 2 or more States; and

"(II) that exercises governmental authority on behalf of the United States or any such Indian Tribe, State, or political subdivision;

"(iii) a bank, as defined in—

"(I) section 3 of the Federal Deposit Insurance Act (12 U.S.C. 1813);

"(II) section 2(a) of the Investment Company Act of 1940 (15 U.S.C. 80a–2(a)); or

"(III) section 202(a) of the Investment Advisers Act of 1940 (15 U.S.C. 80b–2(a));

"(iv) a Federal credit union or a State credit union (as those terms are defined in section 101 of the Federal Credit Union Act (12 U.S.C. 1752));

"(v) a bank holding company (as defined in section 2 of the Bank Holding Company Act of 1956 (12 U.S.C. 1841)) or a savings and loan holding company (as defined in section 10(a) of the Home Owners' Loan Act (12 U.S.C. 1467a(a)));

"(vi) a money transmitting business registered with the Secretary of the Treasury under section 5330;

"(vii) a broker or dealer (as those terms are defined in section 3 of the Securities Exchange Act of 1934 (15 U.S.C. 78c)) that is registered under section 15 of that Act (15 U.S.C. 78o);

"(viii) an exchange or clearing agency (as those terms are defined in section 3 of the Securities Exchange Act of 1934 (15 U.S.C. 78c)) that is registered under section 6 or 17A of that Act (15 U.S.C. 78f, 78q–1);

"(ix) any other entity not described in clause (i), (vii), or (viii) that is registered with the Securities and Exchange Commission under the Securities Exchange Act of 1934 (15 U.S.C. 78a et seq.);

"(x) an entity that—

"(I) is an investment company (as defined in section 3 of the Investment Company Act of 1940 (15 U.S.C. 80a–3)) or an investment adviser (as defined in section 202 of the Investment Advisers Act of 1940 (15 U.S.C. 80b–2)); and

"(II) is registered with the Securities and Exchange Commission under the Investment Company Act of 1940 (15 U.S.C. 80a–1 et seq.) or the Investment Advisers Act of 1940 (15 U.S.C. 80b–1 et seq.);

"(xi) an investment adviser—

"(I) described in section 203(l) of the Investment Advisers Act of 1940 (15 U.S.C. 80b–3(l)); and

"(II) that has filed Item 10, Schedule A, and Schedule B of Part 1A of Form ADV, or any successor thereto, with the Securities and Exchange Commission;

"(xii) an insurance company (as defined in section 2 of the Investment Company Act of 1940 (15 U.S.C. 80a–2));

"(xiii) an entity that—

"(I) is an insurance producer that is authorized by a State and subject to supervision by the insurance commissioner or a similar official or agency of a State; and

"(II) has an operating presence at a physical office within the United States;

"(xiv)(I) a registered entity (as defined in section 1a of the Commodity Exchange Act (7 U.S.C. 1a)); or

"(II) an entity that is—

"(aa)(AA) a futures commission merchant, introducing broker, swap dealer, major swap participant, commodity pool operator, or commodity trading advisor (as those terms are defined in section 1a of the Commodity Exchange Act (7 U.S.C. 1a)); or

"(BB) a retail foreign exchange dealer, as described in section 2(c)(2)(B) of that Act (7 U.S.C. 2(c)(2)(B)); and

"(bb) registered with the Commodity Futures Trading Commission under the Commodity Exchange Act (7 U.S.C. 1 et seq.);

"(xv) a public accounting firm registered in accordance with section 102 of the Sarbanes-Oxley Act of 2002 (15 U.S.C. 7212);

"(xvi) a public utility that provides telecommunications services, electrical power, natural gas, or water and sewer services within the United States;

"(xvii) a financial market utility designated by the Financial Stability Oversight Council under section 804 of the Payment, Clearing, and Settlement Supervision Act of 2010 (12 U.S.C. 5463);

"(xviii) any pooled investment vehicle that is operated or advised by a person described in clause (iii), (iv), (vii), (x), or (xi);

"(xix) any—

"(I) organization that is described in section 501(c) of the Internal Revenue Code of 1986 (determined without regard to section 508(a) of such Code) and exempt from tax under section 501(a) of such Code, except that in the case of any such organization that loses an exemption from tax, such organization shall be considered to be continued to be described in this subclause for the 180-day period beginning on the date of the loss of such tax-exempt status;

"(II) political organization (as defined in section 527(e)(1) of such Code) that is exempt from tax under section 527(a) of such Code; or

"(III) trust described in paragraph (1) or (2) of section 4947(a) of such Code;

"(xx) any corporation, limited liability company, or other similar entity that—

"(I) operates exclusively to provide financial assistance to, or hold governance rights over, any entity described in clause (xix);

"(II) is a United States person;

"(III) is beneficially owned or controlled exclusively by 1 or more United States persons that are United States citizens or lawfully admitted for permanent residence; and

"(IV) derives at least a majority of its funding or revenue from 1 or more United States persons that are United States citizens or lawfully admitted for permanent residence;

"(xxi) any entity that—

"(I) employs more than 20 employees on a full-time basis in the United States;

"(II) filed in the previous year Federal income tax returns in the United States demonstrating more than $5,000,000 in gross receipts or sales in the aggregate, including the receipts or sales of—

"(aa) other entities owned by the entity; and

"(bb) other entities through which the entity operates; and

"(III) has an operating presence at a physical office within the United States;

"(xxii) any corporation, limited liability company, or other similar entity of which the ownership interests are owned or controlled, directly or indirectly, by 1 or more entities described in clause (i), (ii), (iii), (iv), (v), (vii), (viii), (ix), (x), (xi), (xii), (xiii), (xiv), (xv), (xvi), (xvii) (xix), or (xxi);

"(xxiii) any corporation, limited liability company, or other similar entity—

"(I) in existence for over 1 year;

"(II) that is not engaged in active business;

"(III) that is not owned, directly or indirectly, by a foreign person;

"(IV) that has not, in the preceding 12-month period, experienced a change in ownership or sent or received funds in an amount greater than $1,000 (including all funds sent to or received from any source through a financial account or accounts in which the entity, or an affiliate of the entity, maintains an interest); and

"(V) that does not otherwise hold any kind or type of assets, including an ownership interest in any corporation, limited liability company, or other similar entity;

"(xxiv) any entity or class of entities that the Secretary of the Treasury, with the written concurrence of the Attorney General and the Secretary of Homeland Security, has, by regulation, determined should be exempt from the requirements of subsection (b) because requiring beneficial ownership information from the entity or class of entities—

"(I) would not serve the public interest; and

"(II) would not be highly useful in national security, intelligence, and law enforcement agency efforts to detect, prevent, or prosecute money laundering, the financing of terrorism, proliferation finance, serious tax fraud, or other crimes.

"(12) STATE.—The term 'State' means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, the Commonwealth of the Northern Mariana Islands, American Samoa, Guam, the United States Virgin Islands, and any other commonwealth, territory, or possession of the United States.

"(13) UNIQUE IDENTIFYING NUMBER.—The term 'unique identifying number' means, with respect to an individual or an entity with a sole member, the unique identifying number from an acceptable identification document.

"(14) UNITED STATES PERSON.—The term 'United States person' has the meaning given the term in section 7701(a) of the Internal Revenue Code of 1986.

"(b) BENEFICIAL OWNERSHIP INFORMATION REPORTING.—

Regulations.

"(1) REPORTING.—

"(A) IN GENERAL.—In accordance with regulations prescribed by the Secretary of the Treasury, each reporting

company shall submit to FinCEN a report that contains the information described in paragraph (2).

"(B) REPORTING OF EXISTING ENTITIES.—In accordance with regulations prescribed by the Secretary of the Treasury, any reporting company that has been formed or registered before the effective date of the regulations prescribed under this subsection shall, in a timely manner, and not later than 2 years after the effective date of the regulations prescribed under this subsection, submit to FinCEN a report that contains the information described in paragraph (2).

"(C) REPORTING AT TIME OF FORMATION OR REGISTRA-TION.—In accordance with regulations prescribed by the Secretary of the Treasury, any reporting company that has been formed or registered after the effective date of the regulations promulgated under this subsection shall, at the time of formation or registration, submit to FinCEN a report that contains the information described in para-graph (2).

"(D) UPDATED REPORTING FOR CHANGES IN BENEFICIAL OWNERSHIP.—In accordance with regulations prescribed by the Secretary of the Treasury, a reporting company shall, in a timely manner, and not later than 1 year after the date on which there is a change with respect to any information described in paragraph (2), submit to FinCEN a report that updates the information relating to the change.

"(E) TREASURY REVIEW OF UPDATED REPORTING FOR CHANGES IN BENEFICIAL OWNERSHIP.—The Secretary of the Treasury, in consultation with the Attorney General and the Secretary of Homeland Security, shall conduct a review to evaluate— <span style="float:right">Consultation.</span>

"(i) the necessity of a requirement for corporations, limited liability companies, or other similar entities to update the report on beneficial ownership informa-tion in paragraph (2), related to a change in ownership, within a shorter period of time than required under subparagraph (D), taking into account the updating requirements under subparagraph (D) and the informa-tion contained in the reports;

"(ii) the benefit to law enforcement and national security officials that might be derived from, and the burden that a requirement to update the list of bene-ficial owners within a shorter period of time after a change in the list of beneficial owners would impose on corporations, limited liability companies, or other similar entities; and

"(iii) not later than 2 years after the date of enact-ment of this section, incorporate into the regulations, as appropriate, any changes necessary to implement the findings and determinations based on the review required under this subparagraph. <span style="float:right">Deadline.</span>

"(F) REGULATION REQUIREMENTS.—In promulgating the regulations required under subparagraphs (A) through (D), the Secretary of the Treasury shall, to the greatest extent practicable—

134 STAT. 4612          PUBLIC LAW 116–283—JAN. 1, 2021

"(i) establish partnerships with State, local, and Tribal governmental agencies;

"(ii) collect information described in paragraph (2) through existing Federal, State, and local processes and procedures;

"(iii) minimize burdens on reporting companies associated with the collection of the information described in paragraph (2), in light of the private compliance costs placed on legitimate businesses, including by identifying any steps taken to mitigate the costs relating to compliance with the collection of information; and

"(iv) collect information described in paragraph (2) in a form and manner that ensures the information is highly useful in—

"(I) facilitating important national security, intelligence, and law enforcement activities; and

"(II) confirming beneficial ownership information provided to financial institutions to facilitate the compliance of the financial institutions with anti-money laundering, countering the financing of terrorism, and customer due diligence requirements under applicable law.

"(G) REGULATORY SIMPLIFICATION.—To simplify compliance with this section for reporting companies and financial institutions, the Secretary of the Treasury shall ensure that the regulations prescribed by the Secretary under this subsection are added to part 1010 of title 31, Code of Federal Regulations, or any successor thereto.

"(2) REQUIRED INFORMATION.—

Regulations.

"(A) IN GENERAL.—In accordance with regulations prescribed by the Secretary of the Treasury, a report delivered under paragraph (1) shall, except as provided in subparagraph (B), identify each beneficial owner of the applicable reporting company and each applicant with respect to that reporting company by—

"(i) full legal name;

"(ii) date of birth;

"(iii) current, as of the date on which the report is delivered, residential or business street address; and

"(iv)(I) unique identifying number from an acceptable identification document; or

"(II) FinCEN identifier in accordance with requirements in paragraph (3).

"(B) REPORTING REQUIREMENT FOR EXEMPT ENTITIES HAVING AN OWNERSHIP INTEREST.—If an exempt entity described in subsection (a)(11)(B) has or will have a direct or indirect ownership interest in a reporting company, the reporting company or the applicant—

List.

"(i) shall, with respect to the exempt entity, only list the name of the exempt entity; and

"(ii) shall not be required to report the information with respect to the exempt entity otherwise required under subparagraph (A).

Certification.

"(C) REPORTING REQUIREMENT FOR CERTAIN POOLED INVESTMENT VEHICLES.—Any corporation, limited liability company, or other similar entity that is an exempt entity

described in subsection (a)(11)(B)(xviii) and is formed under the laws of a foreign country shall file with FinCEN a written certification that provides identification information of an individual that exercises substantial control over the pooled investment vehicle in the same manner as required under this subsection.

"(D) REPORTING REQUIREMENT FOR EXEMPT SUBSIDIARIES.—In accordance with the regulations promulgated by the Secretary, any corporation, limited liability company, or other similar entity that is an exempt entity described in subsection (a)(11)(B)(xxii), shall, at the time such entity no longer meets the criteria described in subsection (a)(11)(B)(xxii), submit to FinCEN a report containing the information required under subparagraph (A). Regulations.

"(E) REPORTING REQUIREMENT FOR EXEMPT GRANDFATHERED ENTITIES.—In accordance with the regulations promulgated by the Secretary, any corporation, limited liability company, or other similar entity that is an exempt entity described in subsection (a)(11)(B)(xxiii), shall, at the time such entity no longer meets the criteria described in subsection (a)(11)(B)(xxiii), submit to FinCEN a report containing the information required under subparagraph (A). Regulations.

"(3) FINCEN IDENTIFIER.—

"(A) ISSUANCE OF FINCEN IDENTIFIER.—

"(i) IN GENERAL.—Upon request by an individual who has provided FinCEN with the information described in paragraph (2)(A) pertaining to the individual, or by an entity that has reported its beneficial ownership information to FinCEN in accordance with this section, FinCEN shall issue a FinCEN identifier to such individual or entity.

"(ii) UPDATING OF INFORMATION.—An individual or entity with a FinCEN identifier shall submit filings with FinCEN pursuant to paragraph (1) updating any information described in paragraph (2) in a timely manner consistent with paragraph (1)(D).

"(iii) EXCLUSIVE IDENTIFIER.—FinCEN shall not issue more than 1 FinCEN identifier to the same individual or to the same entity (including any successor entity).

"(B) USE OF FINCEN IDENTIFIER FOR INDIVIDUALS.—Any person required to report the information described in paragraph (2) with respect to an individual may instead report the FinCEN identifier of the individual.

"(C) USE OF FINCEN IDENTIFIER FOR ENTITIES.—If an individual is or may be a beneficial owner of a reporting company by an interest held by the individual in an entity that, directly or indirectly, holds an interest in the reporting company, the reporting company may report the FinCEN identifier of the entity in lieu of providing the information required by paragraph (2)(A) with respect to the individual.

"(4) REGULATIONS.—The Secretary of the Treasury shall—

"(A) by regulation prescribe procedures and standards governing any report under paragraph (2) and any FinCEN identifier under paragraph (3); and Procedures.
Standards.

134 STAT. 4614            PUBLIC LAW 116–283—JAN. 1, 2021

"(B) in promulgating the regulations under subparagraph (A) to the extent practicable, consistent with the purposes of this section—

"(i) minimize burdens on reporting companies associated with the collection of beneficial ownership information, including by eliminating duplicative requirements; and

"(ii) ensure the beneficial ownership information reported to FinCEN is accurate, complete, and highly useful.

Deadline.

"(5) EFFECTIVE DATE.—The requirements of this subsection shall take effect on the effective date of the regulations prescribed by the Secretary of the Treasury under this subsection, which shall be promulgated not later than 1 year after the date of enactment of this section.

Time period.
Assessments.

"(6) REPORT.—Not later than 1 year after the effective date described in paragraph (5), and annually thereafter for 2 years, the Secretary of the Treasury shall submit to Congress a report describing the procedures and standards prescribed to carry out paragraph (2), which shall include an assessment of—

"(A) the effectiveness of those procedures and standards in minimizing reporting burdens (including through the elimination of duplicative requirements) and strengthening the accuracy of reports submitted under paragraph (2); and

"(B) any alternative procedures and standards prescribed to carry out paragraph (2).

"(c) RETENTION AND DISCLOSURE OF BENEFICIAL OWNERSHIP INFORMATION BY FINCEN.—

Time period.

"(1) RETENTION OF INFORMATION.—Beneficial ownership information required under subsection (b) relating to each reporting company shall be maintained by FinCEN for not fewer than 5 years after the date on which the reporting company terminates.

"(2) DISCLOSURE.—

"(A) PROHIBITION.—Except as authorized by this subsection and the protocols promulgated under this subsection, beneficial ownership information reported under this section shall be confidential and may not be disclosed by—

"(i) an officer or employee of the United States;

"(ii) an officer or employee of any State, local, or Tribal agency; or

"(iii) an officer or employee of any financial institution or regulatory agency receiving information under this subsection.

"(B) SCOPE OF DISCLOSURE BY FINCEN.—FinCEN may disclose beneficial ownership information reported pursuant to this section only upon receipt of—

"(i) a request, through appropriate protocols—

"(I) from a Federal agency engaged in national security, intelligence, or law enforcement activity, for use in furtherance of such activity; or

"(II) from a State, local, or Tribal law enforcement agency, if a court of competent jurisdiction,

including any officer of such a court, has authorized the law enforcement agency to seek the information in a criminal or civil investigation;

"(ii) a request from a Federal agency on behalf of a law enforcement agency, prosecutor, or judge of another country, including a foreign central authority or competent authority (or like designation), under an international treaty, agreement, convention, or official request made by law enforcement, judicial, or prosecutorial authorities in trusted foreign countries when no treaty, agreement, or convention is available—

"(I) issued in response to a request for assistance in an investigation or prosecution by such foreign country; and

"(II) that—

"(aa) requires compliance with the disclosure and use provisions of the treaty, agreement, or convention, publicly disclosing any beneficial ownership information received; or

"(bb) limits the use of the information for any purpose other than the authorized investigation or national security or intelligence activity;

"(iii) a request made by a financial institution subject to customer due diligence requirements, with the consent of the reporting company, to facilitate the compliance of the financial institution with customer due diligence requirements under applicable law; or

"(iv) a request made by a Federal functional regulator or other appropriate regulatory agency consistent with the requirements of subparagraph (C).

"(C) FORM AND MANNER OF DISCLOSURE TO FINANCIAL INSTITUTIONS AND REGULATORY AGENCIES.—The Secretary of the Treasury shall, by regulation, prescribe the form and manner in which information shall be provided to a financial institution under subparagraph (B)(iii), which regulation shall include that the information shall also be available to a Federal functional regulator or other appropriate regulatory agency, as determined by the Secretary, if the agency—

"(i) is authorized by law to assess, supervise, enforce, or otherwise determine the compliance of the financial institution with the requirements described in that subparagraph;

"(ii) uses the information solely for the purpose of conducting the assessment, supervision, or authorized investigation or activity described in clause (i); and

"(iii) enters into an agreement with the Secretary providing for appropriate protocols governing the safekeeping of the information.

"(3) APPROPRIATE PROTOCOLS.—The Secretary of the Treasury shall establish by regulation protocols described in paragraph (2)(A) that—

"(A) protect the security and confidentiality of any beneficial ownership information provided directly by the Secretary;

*Margin notes:*

Compliance.

Regulations.
Determination.
Assessments.

Compliance.

Contracts.

Regulations.
Requirements.

134 STAT. 4616          PUBLIC LAW 116–283—JAN. 1, 2021

Approval.
Standards.
Procedures.
Certification.
Time period.
Compliance.

"(B) require the head of any requesting agency, on a non-delegable basis, to approve the standards and procedures utilized by the requesting agency and certify to the Secretary semi-annually that such standards and procedures are in compliance with the requirements of this paragraph;

"(C) require the requesting agency to establish and maintain, to the satisfaction of the Secretary, a secure system in which such beneficial ownership information provided directly by the Secretary shall be stored;

"(D) require the requesting agency to furnish a report to the Secretary, at such time and containing such information as the Secretary may prescribe, that describes the procedures established and utilized by such agency to ensure the confidentiality of the beneficial ownership information provided directly by the Secretary;

Certification.

"(E) require a written certification for each authorized investigation or other activity described in paragraph (2) from the head of an agency described in paragraph (2)(B)(i)(I), or their designees, that—

"(i) states that applicable requirements have been met, in such form and manner as the Secretary may prescribe; and

"(ii) at a minimum, sets forth the specific reason or reasons why the beneficial ownership information is relevant to an authorized investigation or other activity described in paragraph (2);

"(F) require the requesting agency to limit, to the greatest extent practicable, the scope of information sought, consistent with the purposes for seeking beneficial ownership information;

"(G) restrict, to the satisfaction of the Secretary, access to beneficial ownership information to whom disclosure may be made under the provisions of this section to only users at the requesting agency—

"(i) who are directly engaged in the authorized investigation or activity described in paragraph (2);

"(ii) whose duties or responsibilities require such access;

"(iii) who—

"(I) have undergone appropriate training; or

"(II) use staff to access the database who have undergone appropriate training;

"(iv) who use appropriate identity verification mechanisms to obtain access to the information; and

"(v) who are authorized by agreement with the Secretary to access the information;

Records.

"(H) require the requesting agency to establish and maintain, to the satisfaction of the Secretary, a permanent system of standardized records with respect to an auditable trail of each request for beneficial ownership information submitted to the Secretary by the agency, including the reason for the request, the name of the individual who made the request, the date of the request, any disclosure of beneficial ownership information made by or to the agency, and any other information the Secretary of the Treasury determines is appropriate;

PUBLIC LAW 116–283—JAN. 1, 2021          134 STAT. 4617

"(I) require that the requesting agency receiving beneficial ownership information from the Secretary conduct an annual audit to verify that the beneficial ownership information received from the Secretary has been accessed and used appropriately, and in a manner consistent with this paragraph and provide the results of that audit to the Secretary upon request;

"(J) require the Secretary to conduct an annual audit of the adherence of the agencies to the protocols established under this paragraph to ensure that agencies are requesting and using beneficial ownership information appropriately; and

"(K) provide such other safeguards which the Secretary determines (and which the Secretary prescribes in regulations) to be necessary or appropriate to protect the confidentiality of the beneficial ownership information.

"(4) VIOLATION OF PROTOCOLS.—Any employee or officer of a requesting agency under paragraph (2)(B) that violates the protocols described in paragraph (3), including unauthorized disclosure or use, shall be subject to criminal and civil penalties under subsection (h)(3)(B).

"(5) DEPARTMENT OF THE TREASURY ACCESS.—

"(A) IN GENERAL.—Beneficial ownership information shall be accessible for inspection or disclosure to officers and employees of the Department of the Treasury whose official duties require such inspection or disclosure subject to procedures and safeguards prescribed by the Secretary of the Treasury.

"(B) TAX ADMINISTRATION PURPOSES.—Officers and employees of the Department of the Treasury may obtain access to beneficial ownership information for tax administration purposes in accordance with this subsection.

"(6) REJECTION OF REQUEST.—The Secretary of the Treasury—

"(A) shall reject a request not submitted in the form and manner prescribed by the Secretary under paragraph (2)(C); and

"(B) may decline to provide information requested under this subsection upon finding that—

"(i) the requesting agency has failed to meet any other requirement of this subsection;

"(ii) the information is being requested for an unlawful purpose; or

"(iii) other good cause exists to deny the request.

"(7) SUSPENSION.—The Secretary of the Treasury may suspend or debar a requesting agency from access for any of the grounds set forth in paragraph (6), including for repeated or serious violations of any requirement under paragraph (2).

"(8) SECURITY PROTECTIONS.—The Secretary of the Treasury shall maintain information security protections, including encryption, for information reported to FinCEN under subsection (b) and ensure that the protections—

"(A) are consistent with standards and guidelines developed under subchapter II of chapter 35 of title 44; and

*Margin notes:*
Audits.
Verification.

Audits.

Regulations.
Determination.

Penalties.

Procedures.

Debarment.

134 STAT. 4618          PUBLIC LAW 116–283—JAN. 1, 2021

"(B) incorporate Federal information system security controls for high-impact systems, excluding national security systems, consistent with applicable law to prevent the loss of confidentiality, integrity, or availability of information that may have a severe or catastrophic adverse effect.

*Time period.*

"(9) REPORT BY THE SECRETARY.—Not later than 1 year after the effective date of the regulations prescribed under this subsection, and annually thereafter for 5 years, the Secretary of the Treasury shall submit to the Committee on Banking, Housing, and Urban Affairs of the Senate and the Committee on Financial Services of the House of Representatives a report, which—

*Classified information.*

"(A) may include a classified annex; and
"(B) shall, with respect to each request submitted under paragraph (2)(B)(i)(II) during the period covered by the report, and consistent with protocols established by the Secretary that are necessary to protect law enforcement sensitive, tax-related, or classified information, include—
"(i) the date on which the request was submitted;
"(ii) the source of the request;
"(iii) whether the request was accepted or rejected or is pending; and
"(iv) a general description of the basis for rejecting the such request, if applicable.

*Deadline.*
*Time period.*

"(10) AUDIT BY THE COMPTROLLER GENERAL.—Not later than 1 year after the effective date of the regulations prescribed under this subsection, and annually thereafter for 6 years, the Comptroller General of the United States shall—

*Determination.*
*Verification.*

"(A) audit the procedures and safeguards established by the Secretary of the Treasury under those regulations, including duties for verification of requesting agencies systems and adherence to the protocols established under this subsection, to determine whether such safeguards and procedures meet the requirements of this subsection and that the Department of the Treasury is using beneficial ownership information appropriately in a manner consistent with this subsection; and
"(B) submit to the Secretary of the Treasury, the Committee on Banking, Housing, and Urban Affairs of the Senate, and the Committee on Financial Services of the House of Representatives a report that contains the findings and determinations with respect to any audit conducted under this paragraph.

"(11) DEPARTMENT OF THE TREASURY TESTIMONY.—

*Deadlines.*
*Time period.*

"(A) IN GENERAL.—Not later than March 31 of each year for 5 years beginning in 2022, the Director shall be made available to testify before the Committee on Banking, Housing, and Urban Affairs of the Senate and the Committee on Financial Services of the House of Representatives, or an appropriate subcommittee thereof, regarding FinCEN issues, including, specifically, issues relating to—
"(i) anticipated plans, goals, and resources necessary for operations of FinCEN in implementing the requirements of the Anti-Money Laundering Act of 2020 and the amendments made by that Act;

PUBLIC LAW 116–283—JAN. 1, 2021     134 STAT. 4619

"(ii) the adequacy of appropriations for FinCEN in the current and the previous fiscal year to—

"(I) ensure that the requirements and obligations imposed upon FinCEN by the Anti-Money Laundering Act of 2020 and the amendments made by that Act are completed as efficiently, effectively, and expeditiously as possible; and

"(II) provide for robust and effective implementation and enforcement of the provisions of the Anti-Money Laundering Act of 2020 and the amendments made by that Act;

"(iii) strengthen FinCEN management efforts, as necessary and as identified by the Director, to meet the requirements of the Anti-Money Laundering Act of 2020 and the amendments made by that Act;

"(iv) provide for the necessary public outreach to ensure the broad dissemination of information regarding any new program requirements provided for in the Anti-Money Laundering Act of 2020 and the amendments made by that Act, including—

"(I) educating the business community on the goals and operations of the new beneficial ownership database; and

"(II) disseminating to the governments of countries that are allies or partners of the United States information on best practices developed by FinCEN related to beneficial ownership information retention and use;

"(v) any policy recommendations that could facilitate and improve communication and coordination between the private sector, FinCEN, and the Federal, State, and local agencies and entities involved in implementing innovative approaches to meet their obligations under the Anti-Money Laundering Act of 2020 and the amendments made by that Act, the Bank Secrecy Act (as defined in section 6003 of the Anti-Money Laundering Act of 2020), and other anti-money laundering compliance laws; and

"(vi) any other matter that the Director determines is appropriate.

"(B) TESTIMONY CLASSIFICATION.—The testimony required under subparagraph (A)—

"(i) shall be submitted in unclassified form; and

"(ii) may include a classified portion.

"(d) AGENCY COORDINATION.—

"(1) IN GENERAL.—The Secretary of the Treasury shall, to the greatest extent practicable, update the information described in subsection (b) by working collaboratively with other relevant Federal, State, and Tribal agencies.

"(2) INFORMATION FROM RELEVANT FEDERAL, STATE, AND TRIBAL AGENCIES.—Relevant Federal, State, and Tribal agencies, as determined by the Secretary of the Treasury, shall, to the extent practicable, and consistent with applicable legal protections, cooperate with and provide information requested by FinCEN for purposes of maintaining an accurate, complete, and highly useful database for beneficial ownership information.

Recommendations.

Classified information.

Updates.

Determination.

134 STAT. 4620          PUBLIC LAW 116–283—JAN. 1, 2021

Consultation.

"(3) REGULATIONS.—The Secretary of the Treasury, in consultation with the heads of other relevant Federal agencies, may promulgate regulations as necessary to carry out this subsection.

"(e) NOTIFICATION OF FEDERAL OBLIGATIONS.—

"(1) FEDERAL.—The Secretary of the Treasury shall take reasonable steps to provide notice to persons of their obligations to report beneficial ownership information under this section, including by causing appropriate informational materials describing such obligations to be included in 1 or more forms or other informational materials regularly distributed by the Internal Revenue Service and FinCEN.

"(2) STATES AND INDIAN TRIBES.—

Deadline.

"(A) IN GENERAL.—As a condition of the funds made available under this section, each State and Indian Tribe shall, not later than 2 years after the effective date of the regulations promulgated under subsection (b)(4), take the following actions:

Assessment.

"(i) The secretary of a State or a similar office in each State or Indian Tribe responsible for the formation or registration of entities created by the filing of a public document with the office under the law of the State or Indian Tribe shall periodically, including at the time of any initial formation or registration of an entity, assessment of an annual fee, or renewal of any license to do business in the United States and in connection with State or Indian Tribe corporate tax assessments or renewals—

"(I) notify filers of their requirements as reporting companies under this section, including the requirements to file and update reports under paragraphs (1) and (2) of subsection (b); and

Records.

"(II) provide the filers with a copy of the reporting company form created by the Secretary of the Treasury under this subsection or an internet link to that form.

Updates.
Website.

"(ii) The secretary of a State or a similar office in each State or Indian Tribe responsible for the formation or registration of entities created by the filing of a public document with the office under the law of the State or Indian Tribes shall update the websites, forms relating to incorporation, and physical premises of the office to notify filers of their requirements as reporting companies under this section, including providing an internet link to the reporting company form created by the Secretary of the Treasury under this section.

"(B) NOTIFICATION FROM THE DEPARTMENT OF THE TREASURY.—A notification under clause (i) or (ii) of subparagraph (A) shall explicitly state that the notification is on behalf of the Department of the Treasury for the purpose of preventing money laundering, the financing of terrorism, proliferation financing, serious tax fraud, and other financial crime by requiring nonpublic registration of business entities formed or registered to do business in the United States.

"(f) NO BEARER SHARE CORPORATIONS OR LIMITED LIABILITY COMPANIES.—A corporation, limited liability company, or other similar entity formed under the laws of a State or Indian Tribe may not issue a certificate in bearer form evidencing either a whole or fractional interest in the entity.

"(g) REGULATIONS.—In promulgating regulations carrying out this section, the Director shall reach out to members of the small business community and other appropriate parties to ensure efficiency and effectiveness of the process for the entities subject to the requirements of this section.

"(h) PENALTIES.—

"(1) REPORTING VIOLATIONS.—It shall be unlawful for any person to—

"(A) willfully provide, or attempt to provide, false or fraudulent beneficial ownership information, including a false or fraudulent identifying photograph or document, to FinCEN in accordance with subsection (b); or

"(B) willfully fail to report complete or updated beneficial ownership information to FinCEN in accordance with subsection (b).

"(2) UNAUTHORIZED DISCLOSURE OR USE.—Except as authorized by this section, it shall be unlawful for any person to knowingly disclose or knowingly use the beneficial ownership information obtained by the person through—

"(A) a report submitted to FinCEN under subsection (b); or

"(B) a disclosure made by FinCEN under subsection (c).

"(3) CRIMINAL AND CIVIL PENALTIES.—

"(A) REPORTING VIOLATIONS.—Any person that violates subparagraph (A) or (B) of paragraph (1)—

"(i) shall be liable to the United States for a civil penalty of not more than $500 for each day that the violation continues or has not been remedied; and

"(ii) may be fined not more than $10,000, imprisoned for not more than 2 years, or both.    *Time period.*

"(B) UNAUTHORIZED DISCLOSURE OR USE VIOLATIONS.—Any person that violates paragraph (2)—

"(i) shall be liable to the United States for a civil penalty of not more than $500 for each day that the violation continues or has not been remedied; and

"(ii)(I) shall be fined not more than $250,000, or imprisoned for not more than 5 years, or both; or    *Time periods.*

"(II) while violating another law of the United States or as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period, shall be fined not more than $500,000, imprisoned for not more than 10 years, or both.

"(C) SAFE HARBOR.—

"(i) SAFE HARBOR.—

"(I) IN GENERAL.—Except as provided in subclause (II), a person shall not be subject to civil or criminal penalty under subparagraph (A) if the person—

"(aa) has reason to believe that any report submitted by the person in accordance with

134 STAT. 4622          PUBLIC LAW 116–283—JAN. 1, 2021

subsection (b) contains inaccurate information; and

"(bb) in accordance with regulations issued by the Secretary, voluntarily and promptly, and in no case later than 90 days after the date on which the person submitted the report, submits a report containing corrected information.

"(II) EXCEPTIONS.—A person shall not be exempt from penalty under clause (i) if, at the time the person submits the report required by subsection (b), the person—

"(aa) acts for the purpose of evading the reporting requirements under subsection (b); and

"(bb) has actual knowledge that any information contained in the report is inaccurate.

"(ii) ASSISTANCE.—FinCEN shall provide assistance to any person seeking to submit a corrected report in accordance with clause (i)(I).

"(4) USER COMPLAINT PROCESS.—

Coordination.

"(A) IN GENERAL.—The Inspector General of the Department of the Treasury, in coordination with the Secretary of the Treasury, shall provide public contact information to receive external comments or complaints regarding the beneficial ownership information notification and collection process or regarding the accuracy, completeness, or timeliness of such information.

"(B) REPORT.—The Inspector General of the Department of the Treasury shall submit to Congress a periodic report that—

Summaries.

"(i) summarizes external comments or complaints and related investigations conducted by the Inspector General related to the collection of beneficial ownership information; and

Recommendations.
Coordination.

"(ii) includes recommendations, in coordination with FinCEN, to improve the form and manner of the notification, collection and updating processes of the beneficial ownership information reporting requirements to ensure the beneficial ownership information reported to FinCEN is accurate, complete, and highly useful.

"(5) TREASURY OFFICE OF INSPECTOR GENERAL INVESTIGATION IN THE EVENT OF A CYBERSECURITY BREACH.—

Determination.
Recommendations.

"(A) IN GENERAL.—In the event of a cybersecurity breach that results in substantial unauthorized access and disclosure of sensitive beneficial ownership information, the Inspector General of the Department of the Treasury shall conduct an investigation into FinCEN cybersecurity practices that, to the extent possible, determines any vulnerabilities within FinCEN information security and confidentiality protocols and provides recommendations for fixing those deficiencies.

"(B) REPORT.—The Inspector General of the Department of the Treasury shall submit to the Secretary of

PUBLIC LAW 116–283—JAN. 1, 2021          134 STAT. 4623

the Treasury a report on each investigation conducted under subparagraph (A).

"(C) ACTIONS OF THE SECRETARY.—Upon receiving a report submitted under subparagraph (B), the Secretary of the Treasury shall—

> "(i) determine whether the Director had any responsibility for the cybersecurity breach or whether policies, practices, or procedures implemented at the direction of the Director led to the cybersecurity breach; and

> "(ii) submit to Congress a written report outlining the findings of the Secretary, including a determination by the Secretary on whether to retain or dismiss the individual serving as the Director.

"(6) DEFINITION.—In this subsection, the term 'willfully' means the voluntary, intentional violation of a known legal duty.

"(i) CONTINUOUS REVIEW OF EXEMPT ENTITIES.—

"(1) IN GENERAL.—On and after the effective date of the regulations promulgated under subsection (b)(4), if the Secretary of the Treasury makes a determination, which may be based on information contained in the report required under section 6502(c) of the Anti-Money Laundering Act of 2020 or on any other information available to the Secretary, that an entity or class of entities described in subsection (a)(11)(B) has been involved in significant abuse relating to money laundering, the financing of terrorism, proliferation finance, serious tax fraud, or any other financial crime, not later than 90 days after the date on which the Secretary makes the determination, the Secretary shall submit to the Committee on Banking, Housing, and Urban Affairs of the Senate and the Committee on Financial Services of the House of Representatives a report that explains the reasons for the determination and any administrative or legislative recommendations to prevent such abuse.

"(2) CLASSIFIED ANNEX.—The report required by paragraph (1)—

> "(A) shall be submitted in unclassified form; and

> "(B) may include a classified annex.".

(b) CONFORMING AMENDMENTS.—Title 31, United States Code, is amended—

(1) in section 5321(a)—

(A) in paragraph (1), by striking "sections 5314 and 5315" each place that term appears and inserting "sections 5314, 5315, and 5336"; and

(B) in paragraph (6), by inserting "(except section 5336)" after "subchapter" each place that term appears;

(2) in section 5322, by striking "section 5315 or 5324" each place that term appears and inserting "section 5315, 5324, or 5336"; and

(3) in the table of sections for chapter 53, as amended by sections 6306(b)(1), 6307(b), and 6313(b) of this division, by adding at the end the following:

"5336. Beneficial ownership information reporting requirements.".

(c) REPORTING REQUIREMENTS FOR FEDERAL CONTRACTORS.—

Determinations.

Effective date.
Determination.
Deadline.
Recommendations.

31 USC 5301 prec.

31 USC 5336 note.

134 STAT. 4624          PUBLIC LAW 116–283—JAN. 1, 2021

Deadline.
Revision.
Requirements.
Disclosure.

(1) IN GENERAL.—Not later than 2 years after the date of enactment of this Act, the Administrator for Federal Procurement Policy shall revise the Federal Acquisition Regulation maintained under section 1303(a)(1) of title 41, United States Code, to require any contractor or subcontractor that is subject to the requirement to disclose beneficial ownership information under section 5336 of title 31, United States Code, as added by subsection (a) of this section, to provide the information required to be disclosed under such section to the Federal Government as part of any bid or proposal for a contract with a value threshold in excess of the simplified acquisition threshold under section 134 of title 41, United States Code.

(2) APPLICABILITY.—The revision required under paragraph (1) shall not apply to a covered contractor or subcontractor, as defined in section 847 of the National Defense Authorization Act for Fiscal Year 2020 (Public Law 116–92), that is subject to the beneficial ownership disclosure and review requirements under that section.

31 USC 5311 note.
Deadline.

(d) REVISED DUE DILIGENCE RULEMAKING.—

(1) IN GENERAL.—Not later than 1 year after the effective date of the regulations promulgated under section 5336(b)(4) of title 31, United States Code, as added by subsection (a) of this section, the Secretary of the Treasury shall revise the final rule entitled "Customer Due Diligence Requirements for Financial Institutions" (81 Fed. Reg. 29397 (May 11, 2016)) to—

(A) bring the rule into conformance with this division and the amendments made by this division;

Compliance.

(B) account for the access of financial institutions to beneficial ownership information filed by reporting companies under section 5336, and provided in the form and manner prescribed by the Secretary, in order to confirm the beneficial ownership information provided directly to the financial institutions to facilitate the compliance of those financial institutions with anti-money laundering, countering the financing of terrorism, and customer due diligence requirements under applicable law; and

(C) reduce any burdens on financial institutions and legal entity customers that are, in light of the enactment of this division and the amendments made by this division, unnecessary or duplicative.

(2) CONFORMANCE.—

Rescissions.

(A) IN GENERAL.—In carrying out paragraph (1), the Secretary of the Treasury shall rescind paragraphs (b) through (j) of section 1010.230 of title 31, Code of Federal Regulations upon the effective date of the revised rule promulgated under this subsection.

(B) RULE OF CONSTRUCTION.—Nothing in this section may be construed to authorize the Secretary of the Treasury to repeal the requirement that financial institutions identify and verify beneficial owners of legal entity customers under section 1010.230(a) of title 31, Code of Federal Regulations.

(3) CONSIDERATIONS.—In fulfilling the requirements under this subsection, the Secretary of the Treasury shall consider—

(A) the use of risk-based principles for requiring reports of beneficial ownership information;

(B) the degree of reliance by financial institutions on information provided by FinCEN for purposes of obtaining and updating beneficial ownership information;

(C) strategies to improve the accuracy, completeness, and timeliness of the beneficial ownership information reported to the Secretary; and

(D) any other matter that the Secretary determines is appropriate.

# TITLE LXV—MISCELLANEOUS

Sec. 6501. Investigations and prosecution of offenses for violations of the securities laws.
Sec. 6502. GAO and Treasury studies on beneficial ownership information reporting requirements.
Sec. 6503. GAO study on feedback loops.
Sec. 6504. GAO CTR study and report.
Sec. 6505. GAO studies on trafficking.
Sec. 6506. Treasury study and strategy on trade-based money laundering.
Sec. 6507. Treasury study and strategy on money laundering by the People's Republic of China.
Sec. 6508. Treasury and Justice study on the efforts of authoritarian regimes to exploit the financial system of the United States.
Sec. 6509. Authorization of appropriations.
Sec. 6510. Discretionary surplus funds.
Sec. 6511. Severability.

## SEC. 6501. INVESTIGATIONS AND PROSECUTION OF OFFENSES FOR VIOLATIONS OF THE SECURITIES LAWS.

(a) IN GENERAL.—Section 21(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78u(d)) is amended—

(1) in paragraph (3)—

(A) in the paragraph heading—

(i) by inserting "CIVIL" before "MONEY PENALTIES"; and

(ii) by striking "IN CIVIL ACTIONS" and inserting "AND AUTHORITY TO SEEK DISGORGEMENT";

(B) in subparagraph (A), by striking "jurisdiction to impose" and all that follows through the period at the end and inserting the following: "jurisdiction to—

"(i) impose, upon a proper showing, a civil penalty to be paid by the person who committed such violation; and

"(ii) require disgorgement under paragraph (7) of any unjust enrichment by the person who received such unjust enrichment as a result of such violation."; and

(C) in subparagraph (B)—

(i) in clause (i), in the first sentence, by striking "the penalty" and inserting "a civil penalty imposed under subparagraph (A)(i)";

(ii) in clause (ii), by striking "amount of penalty" and inserting "amount of a civil penalty imposed under subparagraph (A)(i)"; and

(iii) in clause (iii), in the matter preceding item (aa), by striking "amount of penalty for each such violation" and inserting "amount of a civil penalty imposed under subparagraph (A)(i) for each violation described in that subparagraph";

134 STAT. 4626          PUBLIC LAW 116–283—JAN. 1, 2021

(2) in paragraph (4), by inserting "under paragraph (7)" after "funds disgorged"; and

(3) by adding at the end the following:

"(7) DISGORGEMENT.—In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement.

Deadlines.

"(8) LIMITATIONS PERIODS.—

"(A)  DISGORGEMENT.—The  Commission  may  bring  a claim for disgorgement under paragraph (7)—

"(i)  not  later  than  5  years  after  the  latest  date of  the  violation  that  gives  rise  to  the  action  or  pro- ceeding  in  which  the  Commission  seeks  the  claim occurs; or

"(ii)  not  later  than  10  years  after  the  latest  date of  the  violation  that  gives  rise  to  the  action  or  pro- ceeding  in  which  the  Commission  seeks  the  claim  if the violation involves conduct that violates—

"(I) section 10(b);

"(II)  section  17(a)(1)  of  the  Securities  Act  of 1933 (15 U.S.C. 77q(a)(1));

"(III)  section  206(1)  of  the  Investment  Advisers Act of 1940 (15 U.S.C. 80b–6(1)); or

"(IV)  any  other  provision  of  the  securities  laws for which scienter must be established.

"(B)  EQUITABLE  REMEDIES.—The  Commission  may  seek a  claim  for  any  equitable  remedy,  including  for  an  injunc- tion  or  for  a  bar,  suspension,  or  cease  and  desist  order, not  later  than  10  years  after  the  latest  date  on  which a violation that gives rise to the claim occurs.

"(C)  CALCULATION.—For  the  purposes  of  calculating any  limitations  period  under  this  paragraph  with  respect to  an  action  or  claim,  any  time  in  which  the  person  against which  the  action  or  claim,  as  applicable,  is  brought  is outside  of  the  United  States  shall  not  count  towards  the accrual of that period.

"(9)  RULE  OF  CONSTRUCTION.—Nothing  in  paragraph  (7) may  be  construed  as  altering  any  right  that  any  private  party may  have  to  maintain  a  suit  for  a  violation  of  this  Act.".

Effective date.
15 USC 78u note.

(b)  APPLICABILITY.—The  amendments  made  by  subsection  (a) shall  apply  with  respect  to  any  action  or  proceeding  that  is  pending on, or commenced on or after, the date of enactment of this Act.

### SEC. 6502. GAO AND TREASURY STUDIES ON BENEFICIAL OWNERSHIP INFORMATION REPORTING REQUIREMENTS.

Assessments.

(a)  EFFECTIVENESS  OF  INCORPORATION  PRACTICES  STUDY.—Not later  than  2  years  after  the  effective  date  of  the  regulations  promul- gated  under  section  5336(b)(4)  of  title  31,  United  States  Code, as  added  by  section  6403(a)  of  this  division,  the  Comptroller  General of  the  United  States  shall  conduct  a  study  and  submit  to  Congress a  report  assessing  the  effectiveness  of  incorporation  practices  imple- mented  under  this  division,  and  the  amendments  made  by  this division, in—

(1)  providing  national  security,  intelligence,  and  law enforcement  agencies  with  prompt  access  to  reliable,  useful, and complete beneficial ownership information; and

(2) strengthening the capability of national security, intelligence, and law enforcement agencies to—

(A) combat incorporation abuses and civil and criminal misconduct; and

(B) detect, prevent, or prosecute money laundering, the financing of terrorism, proliferation finance, serious tax fraud, or other crimes.

(b) USING TECHNOLOGY TO AVOID DUPLICATIVE LAYERS OF REPORTING OBLIGATIONS AND INCREASE ACCURACY OF BENEFICIAL OWNERSHIP INFORMATION.—

(1) IN GENERAL.—The Secretary, in consultation with the Attorney General, shall conduct a study to evaluate— *Consultation. Evaluation.*

(A) the effectiveness of using FinCEN identifiers, as defined in section 5336 of title 31, United States Code, as added by section 6403(a) of this division, or other simplified reporting methods in order to facilitate a simplified beneficial ownership regime for reporting companies;

(B) whether a reporting regime, whereby only company shareholders are reported within the ownership chain of a reporting company, could effectively track beneficial ownership information and increase information to law enforcement;

(C) the costs associated with imposing any new verification requirements on FinCEN; and *Costs.*

(D) the resources necessary to implement any such changes.

(2) FINDINGS.—The Secretary shall submit to the relevant committees of jurisdiction—

(A) the findings of the study conducted under paragraph (1); and

(B) recommendations for carrying out the findings described in subparagraph (A). *Recommendations.* *Consultation.*

(c) EXEMPT ENTITIES.—Not later than 2 years after the effective date of regulations promulgated under section 5336(b)(4) of title 31, United States Code, as added by section 6403(a) of this division, the Comptroller General of the United States, in consultation with the Secretary, Federal functional regulators, the Attorney General, the Secretary of Homeland Security, and the intelligence community, shall conduct a study and submit to Congress a report that—

(1) reviews the regulated status, related reporting requirements, quantity, and structure of each class of corporations, limited liability companies, and similar entities that have been explicitly excluded from the definition of reporting company and the requirement to report beneficial ownership information under section 5336 of title 31, United States Code, as added by section 6403(a) of this division; *Reviews.*

(2) assesses the extent to which any excluded entity or class of entities described in paragraph (1) pose significant risks of money laundering, the financing of terrorism, proliferation finance, serious tax fraud, and other financial crime; and *Assessments.*

(3) identifies other policy areas related to the risks of exempt entities described in paragraph (1) for Congress to consider as Congress is conducting oversight of the new beneficial ownership information reporting requirements established by this division and amendments made by this division.

(d) OTHER LEGAL ENTITIES STUDY.—Not later than 2 years after the effective date of the regulations promulgated under section

5336(b)(4) of title 31, United States Code, as added by section 6403(a) of this division, the Comptroller General of the United States shall conduct a study and submit to Congress a report—

(1) identifying each State that has procedures that enable persons to form or register under the laws of the State partnerships, trusts, or other legal entities, and the nature of those procedures;

(2) identifying each State that requires persons seeking to form or register partnerships, trusts, or other legal entities under the laws of the State to provide beneficial owners (as defined in section 5336(a) of title 31, United States Code, as added by section 6403 of this division) or beneficiaries of those entities, and the nature of the required information;

Evaluations.

(3) evaluating whether the lack of available beneficial ownership information for partnerships, trusts, or other legal entities—

(A) raises concerns about the involvement of those entities in terrorism, money laundering, tax evasion, securities fraud, or other misconduct; and

(B) has impeded investigations into entities suspected of the misconduct described in subparagraph (A);

Evaluations.

(4) evaluating whether the failure of the United States to require beneficial ownership information for partnerships and trusts formed or registered in the United States has elicited international criticism; and

(5) including what steps, if any, the United States has taken, is planning to take, or should take in response to the criticism described in paragraph (4).

**SEC. 6503. GAO STUDY ON FEEDBACK LOOPS.**

(a) DEFINITION.—In this section, the term "feedback loop" means feedback provided by the United States Government to relevant parties.

(b) STUDY.—The Comptroller General of the United States shall conduct a study on—

(1) best practices within the United States Government for feedback loops, including regulated private entities, on the usage and usefulness of personally identifiable information, sensitive-but-unclassified data, or similar information provided by the parties to United States Government users of the information and data, including law enforcement agencies and regulators; and

(2) any practice or standard inside or outside the United States for providing feedback through sensitive information and public-private partnership information sharing efforts, specifically related to efforts to combat money laundering and other forms of illicit finance.

(c) REPORT.—Not later than 18 months after the date of enactment of this Act, the Comptroller General of the United States shall submit to the Committee on Banking, Housing, and Urban Affairs of the Senate and the Committee on Financial Services of the House of Representatives a report containing—

Determinations.

(1) all findings and determinations made in carrying out the study required under subsection (b);

(2) with respect to each of paragraphs (1) and (2) of subsection (b), any best practice or significant concern identified by the Comptroller General, and the applicability to public-

private partnerships and feedback loops with respect to efforts by the United States Government to combat money laundering and other forms of illicit finance; and

(3) recommendations of the Comptroller General to reduce or eliminate any unnecessary collection by the United States Government of the information described in subsection (b)(1).

*Recommendations.*

### SEC. 6504. GAO CTR STUDY AND REPORT.

The Comptroller General of the United States shall—

(1) not later than January 1, 2025, commence a study of currency transaction reports, which shall include—

*Analyses.*

(A) a review, carried out in consultation with the Secretary, FinCEN, the Attorney General, the State attorneys general, and State, Tribal, and local law enforcement, of the effectiveness of the currency transaction reporting regime in effect as of the date of the study;

*Review. Consultation.*

(B) an analysis of the importance of currency transaction reports to law enforcement; and

(C) an analysis of the effects of raising the currency transaction report threshold; and

(2) not later than December 31, 2025, submit to the Secretary and Congress a report that includes—

(A) all findings and determinations made in carrying out the study required under paragraph (1); and

*Determinations.*

(B) recommendations for improving the currency transaction reporting regime.

*Recommendations.*

### SEC. 6505. GAO STUDIES ON TRAFFICKING.

(a) DEFINITION OF HUMAN TRAFFICKING.—In this section, the term "human trafficking" has the meaning given the term "severe forms of trafficking in persons" in section 103 of the Trafficking Victims Protection Act of 2000 (22 U.S.C. 7102).

(b) GAO STUDY AND REPORT ON STOPPING TRAFFICKING, ILLICIT FLOWS, LAUNDERING, AND EXPLOITATION.—

(1) STUDY.—The Comptroller General of the United States shall carry out a study, in consultation with law enforcement, relevant Federal agencies, appropriate private sector stakeholders (including financial institutions and data and technology companies), academic and other research organizations (including survivor and victim advocacy organizations), and any other group that the Comptroller General determines is appropriate on—

*Consultation. Determination.*

(A) the major trafficking routes used by transnational criminal organizations, terrorists, and others, and to what extent the trafficking routes for people (including children), drugs, weapons, cash, child sexual exploitation materials, or other illicit goods are similar, related, or contiguous;

(B) commonly used methods to launder and move the proceeds of trafficking;

(C) the types of suspicious financial activity that are associated with illicit trafficking networks, and how financial institutions identify and report such activity;

(D) the nexus between the identities and finances of trafficked persons and fraud;

(E) the tools, guidance, training, partnerships, supervision, or other mechanisms that Federal agencies, including FinCEN, the Federal financial regulators, and

law enforcement, provide to help financial institutions identify techniques and patterns of transactions that may involve the proceeds of trafficking;

(F) what steps financial institutions are taking to detect and prevent bad actors who are laundering the proceeds of illicit trafficking, including data analysis, policies, training procedures, rules, and guidance;

(G) what role gatekeepers, such as lawyers, notaries, accountants, investment advisors, logistics agents, and trust and company service providers, play in facilitating trafficking networks and the laundering of illicit proceeds; and

(H) the role that emerging technologies, including artificial intelligence, digital identity technologies, distributed ledger technologies, virtual assets, and related exchanges and online marketplaces, and other innovative technologies, can play in assisting with and potentially enabling the laundering of proceeds from trafficking.

(2) REPORT TO CONGRESS.—Not later than 1 year after the date of enactment of this Act, the Comptroller General of the United States shall submit to the Committee on Banking, Housing, and Urban Affairs of the Senate and the Committee on Financial Services of the House of Representatives a report—

(A) summarizing the results of the study required under paragraph (1); and

(B) that contains any recommendations for legislative or regulatory action that would improve the efforts of Federal agencies to combat trafficking or the laundering of proceeds from such activity.

(c) GAO STUDY AND REPORT ON FIGHTING ILLICIT NETWORKS AND DETECTING TRAFFICKING.—

(1) STUDY.—The Comptroller General of the United States shall conduct a study on how a range of payment systems and methods, including virtual currencies in online marketplaces, are used to facilitate human trafficking and drug trafficking, which shall consider—

(A) how online marketplaces, including the dark web, may be used as platforms to buy, sell, or facilitate the financing of goods or services associated with human trafficking or drug trafficking, specifically, opioids and synthetic opioids, including fentanyl, fentanyl analogues, and any precursor chemical associated with manufacturing fentanyl or fentanyl analogues, destined for, originating from, or within the United States;

(B) how financial payment methods, including virtual currencies and peer-to-peer mobile payment services, may be utilized by online marketplaces to facilitate the buying, selling, or financing of goods and services associated with human trafficking or drug trafficking destined for, originating from, or within the United States;

(C) how virtual currencies may be used to facilitate the buying, selling, or financing of goods and services associated with human trafficking or drug trafficking, destined for, originating from, or within the United States, when an online platform is not otherwise involved;

(D) how illicit funds that have been transmitted online and through virtual currencies are repatriated into the

PUBLIC LAW 116–283—JAN. 1, 2021          134 STAT. 4631

formal banking system of the United States through money laundering or other means;

(E) the participants, including State and non-State actors, throughout the entire supply chain that may participate in or benefit from the buying, selling, or financing of goods and services associated with human trafficking or drug trafficking, including through online marketplaces or using virtual currencies, destined for, originating from, or within the United States;

(F) Federal and State agency efforts to impede the buying, selling, or financing of goods and services associated with human trafficking or drug trafficking destined for, originating from, or within the United States, including efforts to prevent the proceeds from human trafficking or drug trafficking from entering the United States banking system;

(G) how virtual currencies and their underlying technologies can be used to detect and deter these illicit activities; and

(H) to what extent immutability and traceability of virtual currencies can contribute to the tracking and prosecution of illicit funding.

(2) REPORT TO CONGRESS.—Not later than 1 year after the date of enactment of this Act, the Comptroller General of the United States shall submit to the Committee on Banking, Housing, and Urban Affairs of the Senate and the Committee on Financial Services of the House of Representatives a report—

(A) summarizing the results of the study required under paragraph (1); and

Summaries.

(B) that contains any recommendations for legislative or regulatory action that would improve the efforts of Federal agencies to impede the use of virtual currencies and online marketplaces in facilitating human trafficking and drug trafficking.

Recommendations.

## SEC. 6506. TREASURY STUDY AND STRATEGY ON TRADE-BASED MONEY LAUNDERING.

(a) STUDY REQUIRED.—

(1) IN GENERAL.—The Secretary shall carry out a study, in consultation with appropriate private sector stakeholders, academic and other international trade experts, and Federal agencies, on trade-based money laundering.

Consultation.

(2) CONTRACTING AUTHORITY.—The Secretary may enter into a contract with a private third-party entity to carry out the study required by paragraph (1).

(b) REPORT REQUIRED.—

(1) IN GENERAL.—Not later than 1 year after the date of enactment of this Act, the Secretary shall submit to Congress a report that includes—

(A) all findings and determinations made in carrying out the study required under subsection (a); and

Determinations.

(B) proposed strategies to combat trade-based money laundering.

(2) CLASSIFIED ANNEX.—The report required under paragraph (1)—

(A) shall be submitted in unclassified form; and

(B) may include a classified annex.

### SEC. 6507. TREASURY STUDY AND STRATEGY ON MONEY LAUNDERING BY THE PEOPLE'S REPUBLIC OF CHINA.

(a) STUDY.—The Secretary shall carry out a study, which shall rely substantially on information obtained through the trade-based money laundering analyses conducted by the Comptroller General of the United States, on—

(1) the extent and effect of illicit finance risk relating to the Government of the People's Republic of China and Chinese firms, including financial institutions;

Assessment.

(2) an assessment of the illicit finance risks emanating from the People's Republic of China;

(3) those risks allowed, directly or indirectly, by the Government of the People's Republic of China, including those enabled by weak regulatory or administrative controls of that government; and

(4) the ways in which the increasing amount of global trade and investment by the Government of the People's Republic of China and Chinese firms exposes the international financial system to increased risk relating to illicit finance.

Consultation.
Determination.

(b) STRATEGY TO COUNTER CHINESE MONEY LAUNDERING.—Upon the completion of the study required under subsection (a), the Secretary, in consultation with such other Federal agencies as the Secretary determines appropriate, shall develop a strategy to combat Chinese money laundering activities.

(c) REPORT.—Not later than 1 year after the date of enactment of this Act, the Secretary shall submit to Congress a report containing—

(1) all findings and determinations made in carrying out the study required under subsection (a); and

(2) the strategy developed under subsection (b).

(d) CLASSIFIED ANNEX.—The report required by subsection (c)—

(1) shall be submitted in unclassified form; and

(2) may include a classified annex.

### SEC. 6508. TREASURY AND JUSTICE STUDY ON THE EFFORTS OF AUTHORITARIAN REGIMES TO EXPLOIT THE FINANCIAL SYSTEM OF THE UNITED STATES.

Deadline.
Consultation.

(a) IN GENERAL.—Not later than 1 year after the date of enactment of this Act, the Secretary and the Attorney General, in consultation with the heads of other relevant national security, intelligence, and law enforcement agencies, shall conduct a study that considers how authoritarian regimes in foreign countries and their proxies use the financial system of the United States to—

(1) conduct political influence operations;

(2) sustain kleptocratic methods of maintaining power;

(3) export corruption;

(4) fund nongovernmental organizations, media organizations, or academic initiatives in the United States to advance the interests of those regimes; and

(5) otherwise undermine democratic governance in the United States and the partners and allies of the United States.

(b) REPORT.—Not later than 2 years after the date of enactment of this Act, the Secretary shall submit to the Committee on Banking, Housing, and Urban Affairs of the Senate and the Committee on Financial Services of the House of Representatives a report that contains—

(1) the results of the study required under subsection (a); and

(2) any recommendations for legislative or regulatory action, or steps to be taken by United States financial institutions, that would address exploitation of the financial system of the United States by foreign authoritarian regimes.

Recommendations.

### SEC. 6509. AUTHORIZATION OF APPROPRIATIONS.

(a) IN GENERAL.—Subsection (l) of section 310, of title 31, United States Code, as redesignated by section 6103(1) of this division, is amended by striking paragraph (1) and inserting the following:

"(1) IN GENERAL.—There are authorized to be appropriated to FinCEN to carry out this section, to remain available until expended—

"(A) $136,000,000 for fiscal year 2021;

"(B) $60,000,000 for fiscal year 2022; and

"(C) $35,000,000 for each of fiscal years 2023 through 2026.".

(b) BENEFICIAL OWNERSHIP INFORMATION REPORTING REQUIREMENTS.—Section 5336 of title 31, United States Code, as added by section 6403(a) of this division, is amended by adding at the end the following:

"(j) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated to FinCEN for each of the 3 fiscal years beginning on the effective date of the regulations promulgated under subsection (b)(4), such sums as may be necessary to carry out this section, including allocating funds to the States to pay reasonable costs relating to compliance with the requirements of such section.".

### SEC. 6510. DISCRETIONARY SURPLUS FUNDS.

12 USC 289 note.

The dollar amount specified under section 7(a)(3)(A) of the Federal Reserve Act (12 U.S.C. 289(a)(3)(A)) is reduced by $40,000,000.

### SEC. 6511. SEVERABILITY.

31 USC 5311 note.

If any provision of this division, an amendment made by this division, or the application of such provision or amendment to any person or circumstance is held to be unconstitutional, the remainder of this division, the amendments made by this division, and the application of the provisions of such to any person or circumstance shall not be affected thereby.

# DIVISION G—ELIJAH E. CUMMINGS COAST GUARD AUTHORIZATION ACT OF 2020

Elijah E. Cummings Coast Guard Authorization Act of 2020.

### SEC. 8001. SHORT TITLE.

This division may be cited as the "Elijah E. Cummings Coast Guard Authorization Act of 2020".

### SEC. 8002. DEFINITION OF COMMANDANT.

14 USC 106 note.

In this division, the term "Commandant" means the Commandant of the Coast Guard.