FILED
2023 May-02 PM 04:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| NATIONAL SMALL BUSINESS UNITED d/b/a/ the NATIONAL SMALL BUSINESS ASSOCIATION, *et al.* <br><br> Plaintiffs, <br><br> v. <br><br> JANET YELLEN, *et al.* <br><br> Defendants. | Case No. 5:22-cv-01448 |

## DECLARATION OF TODD MCCRACKEN

I, Todd McCracken, declare:

1. I am a resident of the District of Columbia over the age of 18, and a citizen of the United States. I have personal knowledge of the facts stated in this declaration.

2. I am the President and Chief Executive Officer ("CEO") of National Small Business United, doing business as the National Small Business Association ("NSBA"). I have been employed by the NSBA since 1988. I first served as its Vice President of Government Affairs before becoming President in 1997.

3. The NSBA is an Ohio non-profit corporation that represents and protects the rights of small businesses across the United States. The NSBA has been advocating for small businesses since 1937 when its founder, DeWitt McKinley Emery, formed

an association of small businesspeople with the express purpose of promoting their interests in Washington, D.C. It is a staunchly non-partisan advocacy organization.

4. The NSBA represents over 65,000 businesses and entrepreneurs located in all 50 states. Our members come from every sector of the U.S. economy, including manufacturing, retail, food service, and professional services.

5. The NSBA's principal activities are to advocate for its members—and the 67.1 million Americans who make their livings employed by small businesses—before the federal government and to provide its members guidance and data on how to navigate government regulations. Among the resources we provide are educational programming regarding federal regulations and periodic training for members. Since 2020, for example, thousands of our members relied on our guidance and online programming to take advantage of the many pandemic-related programs for small businesses, but also on how to comply with their obligations as employers.

6. Since the passage of the Corporate Transparency Act ("CTA"), NSBA members have regularly expressed to me and my staff their concerns about being compelled to turn over personal information for storage in a federal law enforcement database. Some NSBA members use corporate entities to protect their private information (like their home addresses), and do not understand why forming a

2

company or an LLC should subject them to suspicion of criminal activity or required reporting of their private information to a federal law-enforcement database.

7. The CTA also poses significant problems to the NSBA's efforts to assist its members comply with a variety of regulations. The NSBA regularly counsels small businesses on federal requirements, often because such businesses do not have the expertise to navigate these requirements on their own and do not have the resources to hire outside advisors. I am concerned that the burden imposed by the CTA's reporting requirements will lead to significant confusion among NSBA's members, in particular, in trying to parse who constitutes a "beneficial owner" or "applicant," such that members may be at risk of running afoul of the CTA's criminal penalties.

8. I understand that the CTA exempts certain businesses from its reporting requirements, including those businesses that employ more than 20 full-time employees, have an operating presence in a physical office in the United States, and have more than $5 million in annual gross receipts or sales. The other exceptions, which I believe are mostly related to financial institutions, appear to be less relevant to the NSBA's members.

9. Unfortunately, about eighty percent of NSBA's members represent businesses owned by U.S. persons that have fewer than 20 full-time employees and less than $5,000,000 in gross receipts or sales. I understand that, as a result, many of NSBA's members would be subject to the CTA's reporting requirements if they go into effect

as regulations currently provide, in January 2024 and 2025. Moreover, our members frequently file to form new entities according to their operational needs, and therefore would be subject to the CTA's reporting requirements regarding applicants as well as those regarding beneficial owners. Others may currently have existing companies but intend to file applications to form other entities for different purposes.

10. The burdens and risks imposed by the CTA's reporting requirements are significant. In February of this year, NSBA hosted a national conference of small-business leaders. The conference was designed to assess the top issues facing the small business community. Ultimately, the CTA requirements were voted as the Number 5 priority—ahead of tax simplification, workforce training, immigration reform, and other issues critical to smaller businesses.

11. Isaac Winkles is a member of the NSBA who resides in Huntsville, Alabama. The NSBA has other members, like Mr. Winkles, who also reside or have businesses in northern Alabama. In total, NSBA has 10 member companies in Huntsville and at least six additional members in other parts of the Northeastern Division of the Northern District of Alabama. As with our members nationally, the vast majority of these entities will be subject to the CTA's reporting requirements.

12. Based on my conversations with various members, many—and likely the majority—of NSBA's members are not aware of the CTA or its reporting requirements. The job of notifying members will itself consume NSBA resources.

Consequently, I am concerned that CTA compromises our ability to provide our members with the necessary guidance that they have come to expect from the NSBA. Once the CTA and its implementing regulations come into effect, I expect the association will need to engage in a significant and sustained education and awareness campaign around the CTA. Given the finite resources of the association, this work will necessarily result in fewer opportunities for NSBA to educate and train member companies on other topics, such as raising capital; finding, training and retaining workers; complying with employment laws; and protecting themselves, their customers, and employees from a range of cyber-security threats.

13. In sum, the CTA's disclosure requirements will substantially impair the NSBA's ability to provide necessary services to its members and will detract from its ability to continue to provide the services and advice its members have come to expect.

I declare under penalty of perjury under the laws of the United States and the District of Columbia that the foregoing is true and correct.

Executed at Washington, DC
on: May 1, 2023

Respectfully submitted,

*[signature: Todd McCracken]*

Todd McCracken
President & CEO
National Small Business Association

6