

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

|  |  |  |
|---|---|---|
| _____ | ) | |
| NATIONAL SMALL BUSINESS UNITED d/b/a the NATIONAL SMALL BUSINESS ASSOCIATION, *et al.*, | ) ) ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | Civil Action No. |
| v. | ) | 5:22-CV-1448-LCB |
|  | ) | |
| JANET YELLEN, in her official capacity as Secretary of the Treasury, *et al.*, | ) ) ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | |

## REPLY BRIEF IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE,
## CROSS-MOTION FOR SUMMARY JUDGMENT

Dated:  May 25, 2023

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

| | |
|---|---|
| DIANE KELLEHER<br>Assistant Branch Director | United States Department of Justice<br>Civil Division, Federal Programs Branch |
| STUART J. ROBINSON<br>Senior Counsel | 450 Golden Gate Ave., Suite 7-5395<br>San Francisco, CA 94102<br>Tel: (415) 436-6635 |
| TAYLOR N. PITZ<br>Trial Attorney | Fax: (415) 436-6632<br>Email: stuart.j.robinson@usdoj.gov |
| | *Counsel for Defendants* |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................1

DISCUSSION ......................................................................................1

I.     Plaintiffs Lack Standing to Assert Their Claims. .............................1

II.    The CTA is Authorized by Congress's Article I Powers. ................8

       A.     Foreign Affairs and National Security Powers ....................8

       B.     Commerce Clause.................................................................10

       C.     Taxing Authority .................................................................14

III.   The CTA Does Not Violate Plaintiffs' Constitutional Rights.......15

       A.     The CTA Does Not Invade Plaintiffs' Right to Privacy. ...................15

              1.     Plaintiffs' Fourth Amendment Claim Fails. ............................15

              2.     Plaintiffs' Fifth Amendment Claim Fails. ................................17

       B.     The CTA Accords with the First Amendment. ...................18

       C.     The CTA Accords with the Due Process Clause. ..............20

CONCLUSION ....................................................................................20

# TABLE OF AUTHORITIES

## CASES

*Aaron Priv. Clinic Mgmt. LLC v. Berry*,
  912 F.3d 1330 (11th Cir. 2019) ............................................................7

*Ala.-Tombigbee Rivers Coal. v. Kempthorne*,
  477 F.3d 1250 (11th Cir. 2007) ............................................... 11, 12, 14

*Am. Power & Light Co. v. SEC*,
  329 U.S. 90 (1946) ...............................................................13

*Bancoult v. McNamara*,
  445 F.3d 427 (D.C. Cir. 2006)...............................................9

*Battle v. Barton*,
  970 F.2d 779 (11th Cir. 1992) ............................................17

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ...........................................................18

*Bellis v. United States*,
  417 U.S. 85 (1974) ....................................................... 17, 18

*Bond v. United States*,
  564 U.S. 211 (2011) .............................................................8

*Cal. Bankers Ass'n v. Shultz*,
  416 U.S. 21 (1974) ....................................................... 13, 18

*Carpenter v. United States*,
  138 S. Ct. 2206 (2018)............................................. 15, 16, 17

*Chaney v. Fayette Cnty. Pub. Sch. Dist.*,
  977 F. Supp. 2d 1308 (N.D. Ga. 2013) ...............................16

*Cheshire Bridge Holdings, LLC v. City of Atlanta*,
  15 F.4th 1362 (11th Cir. 2021)...................................... 18, 19

*Common Cause/Georgia v. Billups*,
  554 F.3d 1340 (11th Cir. 2009) ............................................4

*Couch v. United States*,
  409 U.S. 322 (1973) ...........................................................18

ii

*Cousins v. Sch. Bd. of Orange Cnty.*,
   ---F. Supp. 3d---, 2022 WL 18299839 (M.D. Fla. Oct. 20, 2022) .........................6

*Eknes-Tucker v. Marshall*,
   603 F. Supp. 3d 1131 (M.D. Ala. 2022) .............................................................20

*Elec. Bond & Share Co. v. SEC*,
   303 U.S. 419 (1938) ..........................................................................................11

*Equal. Fla. v. Fla. State Bd. of Educ.*,
   No. 4:22-cv-134, 2022 WL 19263602 (N.D. Fla. Sept. 29, 2022), *appeal filed*,
   *M.A. v. Fla. State Bd. of Educ.*, No. 23-110161 (11th Cir. Mar. 29, 2023) ...........5

*FEC v. Ted Cruz for Senate*,
   142 S. Ct. 1638 (2022) .........................................................................................3

*Florida State Conference NAACP v. Browning*,
   522 F.3d 1153 (11th Cir. 2008) .......................................................................4, 5

*Fong Yue Ting v. United States*,
   149 U.S. 698 (1893) .............................................................................................9

*Ga. Republican Party v. SEC*,
   888 F.3d 1198 (11th Cir. 2018) .....................................................................6, 20

*Gardner v. Mutz*,
   962 F.3d 1329 (11th Cir. 2020) ...........................................................................4

*Gonzales v. Raich*,
   545 U.S. 1 (2005) ...............................................................................................12

*Groome Res. Ltd., LLC v. Par. of Jefferson*,
   234 F.3d 192 (5th Cir. 2000) ..............................................................................12

*Helvering v. Mitchell*,
   303 U.S. 391 (1938) ..................................................................................... 11, 15

*Holder v. Humanitarian L. Project*,
   561 U.S. 1 (2010) ...............................................................................................19

*Interstate Nat. Gas Ass'n of Am. v. FERC*,
   285 F.3d 18 (D.C. Cir. 2002) ...............................................................................7

*Jacobson v. Fla. Sec'y of State*,
   974 F.3d 1236 (11th Cir. 2020) ........................................................3, 7

*Katz v. United States*,
   389 U.S. 347 (1967) ................................................................................15

*Keyhanpoor v. Blinken*,
   ---F. Supp. 3d---, 2022 WL 4534629 (D.D.C. Sept. 28, 2022) ............5

*Knight v. Miami-Dade Cnty.*,
   856 F.3d 795 (11th Cir. 2017) ...............................................................17

*Know Your IX v. DeVos*,
   No. 20-cv-01224, 2020 WL 6150935 (D. Md. Oct. 20, 2020) ............3

*Lady J. Lingerie, Inc. v. City of Jacksonville*,
   176 F.3d 1358 (11th Cir. 1999) ...................................................... 18, 19

*Lewis v. Casey*,
   518 U.S. 343 (1996) ..................................................................................1

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992) ..................................................................................7

*Miccosukee Tribe of Indians of Fla. v. United States*,
   716 F.3d 535 (11th Cir. 2013) .................................................................2

*N. Am. Co. v. SEC*,
   327 U.S. 686 (1946) ................................................................................12

*NFIB v. Sebelius*,
   567 U.S. 519 (2012) ........................................................................ 13, 14

*Parker v. Levy*,
   417 U.S. 733 (1974) ................................................................................20

*Savage Servs. Corp. v. United States*,
   522 F. Supp. 3d 1114 (S.D. Ala. 2021) ...............................................19

*Sonzinsky v. United States*,
   300 U.S. 506 (1937) ................................................................................15

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ..................................................................................6

*United States v. Curtiss-Wright Export Corp.*,
   299 U.S. 304 (1936) ...................................................................9, 10

*United States v. Doremus*,
   249 U.S. 86 (1919) .............................................................................15

*United States v. Gayden*,
   977 F.3d 1146 (11th Cir. 2020) .........................................................17

*United States v. Kramer*,
   No. 07-cr-80136, 2008 WL 313827 (S.D. Fla. Feb. 4, 2008) .............15

*United States v. Lue*,
   134 F.3d 79 (2d Cir. 1998) ..................................................................9

*United States v. Maxwell*,
   446 F.3d 1210 (11th Cir. 2006) .................................................... 11, 12

*United States v. Miller*,
   425 U.S. 435 (1976) ...........................................................................16

*United States v. Rivers*,
   588 F. App'x 905 (11th Cir. 2014)......................................................14

*United States v. Ruggiero*,
   791 F.3d 1281 (11th Cir. 2015) .......................................................9, 11

*United States v. Salerno*,
   481 U.S. 739 (1987) .................................................................. 1, 9, 14

*United States v. Trader*,
   981 F.3d 961 (11th Cir. 2020) ............................................................16

*Van Cleve v. United States*,
   No. 21-13699, 2022 WL 1640669 (11th Cir. May 24, 2022) ...............3

*Viasat, Inc. v. FCC*,
   47 F.4th 769 (D.C. Cir. 2022) ..............................................................5

## STATUTES

31 U.S.C. § 5336................................................................. *passim*

Pub. L. No. 116-283,
   134 Stat. 3388 (Jan. 1, 2021)................................................ 8, 11, 12, 14

**UNITED STATES CONSTITUTION**

U.S. Const. art. I, § 8.................................................................................9

U.S. Const. art. II, § 2 ...............................................................................9

U.S. Const. art. II, § 3 ...............................................................................9

**REGULATIONS**

87 Fed. Reg. 59,498 (Sept. 30, 2022) ............................................. *passim*

**OTHER AUTHORITIES**

166 Cong. Rec. H6907 (Dec. 8, 2020)......................................................11

166 Cong. Rec. S7289 (Dec. 9, 2020) ....................................... 8, 9, 11, 12

H.R. Rep. No. 116-227 (2019)...................................................................8

NSBA, The Corporate Transparency Act,
    https://perma.cc/EZ45-K7AW.............................................................5

https://perma.cc/H5UA-7NAV ................................................................10

**INTRODUCTION**

Plaintiffs ask this Court to declare the CTA unconstitutional in all conceivable applications.  But they have failed to demonstrate standing to assert their claims, a deficiency that their belated evidentiary submission fails to cure.  Their request is also based on a fundamental misunderstanding of both the statute—it does not, for example, regulate the mere act of incorporation—as well as binding and persuasive precedent concerning Congress's Article I powers and the Bill of Rights.  And while facial challenges are "the most difficult [] to mount successfully," *United States v. Salerno*, 481 U.S. 739, 745 (1987), Plaintiffs here have made that task impossible by failing to dispute, and therefore admitting, the Congressional findings and other material facts submitted by Defendants.  Initial Order at 18, ECF No. 18.  The Court should therefore grant Defendants' dispositive motion.  ECF No. 24.

**DISCUSSION**

**I.      Plaintiffs Lack Standing to Assert Their Claims.**

Even if the Court were to consider Plaintiffs' newly offered evidence,[1] it should conclude that they have failed to establish standing.  First, and fatally, Plaintiffs do not address standing with respect to each claim even though "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996).  Moreover, Plaintiffs assert associational standing and the claims at issue are fact-intensive.  *See*

---

[1] Contrary to the Court's Initial Order, Plaintiffs' motion for summary judgment relied solely on their Complaint in discussing NSBA and Mr. Winkles.  Pls.' MSJ at 3-4, ECF No. 23-1.

Defs.' Br. at 24-25, 49, 57, ECF No. 24-1; Pls.' Opp. at 37 n.5, ECF No. 39 (agreeing that Fourth and Fifth Amendment claims require "a fact-driven balancing").

Plaintiffs otherwise fail to satisfy the applicable Article III standards. Plaintiffs do not dispute that Mr. Winkles himself provided to the government, or otherwise made publicly available, the precise information about him that the CTA requires. Pls.' Opp. at 6; Winkles Decl. ¶ 4, ECF No. 39-3. Instead, Plaintiffs assert that Mr. Winkles's "injury is not mere forced disclosure of personal information[,]" but "arises from the CTA's requirement to report personal information *to FinCEN*[.]" Pls.' Opp. at 4; *id.* at 6-7. That argument, however, does not align with the Complaint, *e.g.*, Compl. ¶¶ 3, 7, 8, 12, 33, 52-53, 58 (alleging that disclosure "to the federal government" writ large, rather than FinCEN specifically, violates Plaintiffs' rights). Nor may "a plaintiff [] amend his complaint through argument made in his brief in opposition to the defendant's motion for summary judgment." *Miccosukee Tribe of Indians of Fla. v. United States*, 716 F.3d 535, 559 (11th Cir. 2013). Nonetheless, Plaintiffs cite no authority for the proposition that injury turns on the specific recipient of previously disclosed information.

Perhaps sensing this deficiency, Plaintiffs emphasize that the information provided to FinCEN may "potential[ly]" be shared consistent with 31 U.S.C. § 5336(c)(2)(A). Pls.' Opp. at 4; *see* Winkles Decl. ¶ 8. But Plaintiffs themselves admit that the "*risk* that [Mr. Winkles's] information will be leaked or accessed" is not a cognizable injury. Pls.' Opp. at 6-7 & n.2. Thus, Plaintiffs are left to argue

2

that FinCEN's maintenance of Mr. Winkles's previously disclosed and publicly available information is an injury in fact.  *Id.*  That unadorned theory fails for the reasons already discussed by Defendants.  Defs.' Br. at 19-21.  *Cf. Van Cleve v. U.S. Sec'y of Com.*, No. 21-13699, 2022 WL 1640669, at *4 (11th Cir. May 24, 2022).[2]

Plaintiffs have likewise failed to demonstrate that NSBA has either organizational or associational standing.  As to the former, Plaintiffs argue that NSBA suffered harm because it must counsel members about the CTA, thereby diverting its resources.  Pls.' Opp. at 8-11; McCracken Decl. ¶ 12, ECF No. 39-2. While "an organization has standing to sue on its own behalf if the defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts[,]" *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1250 (11th Cir. 2020), here Plaintiffs' Complaint and declaration confirm that NSBA's "primary mission . . . is to provide its members with information and advice regarding legal and regulatory issues faced by small businesses," Compl. ¶ 13; McCracken Decl. ¶¶ 5, 7.  Thus NSBA cannot "claim injury on the basis of a need to engage in that exact activity[.]"  *Know Your IX v. DeVos*, No. 20-cv-01224, 2020 WL 6150935, at *6 (D. Md. Oct. 20, 2020). Plaintiffs' only response is that "NSBA alleges that the CTA is *not* 'lawfully

---

[2] Defendants' point that Mr. Winkles's alleged injury is self-inflicted is based on his voluntary disclosure of information, not on his being subject to the CTA, *contra* Pls.' Opp. at 7.  And in *FEC v. Ted Cruz for Senate*, cited in Pls.' Opp. at 7-8, the Supreme Court did not consider a plaintiff's standing to challenge a reporting requirement where the plaintiff had previously disclosed the information at issue.  142 S. Ct. 1638, 1647 (2022) (standing based on $10,000 economic harm).

enacted.'"  Pls.' Opp. at 9 (quoting Compl. ¶ 11).  But Plaintiffs are incorrectly

conflating standing with the merits.  *Gardner v. Mutz*, 962 F.3d 1329, 1339 (11th

Cir. 2020).

The cases Plaintiffs cite, Pls.' Opp. at 8-9, show the comparative weakness of

their argument.  In *Florida State Conference NAACP v. Browning*, the court held

that the plaintiffs had organizational standing to challenge a voter registration

statute; but there, one plaintiff demonstrated that "it will expend many more hours

than it otherwise would have conducting follow-up work with registration applicants

because voters will have their applications denied due to matching failures[,]" and

"the plaintiffs have averred that their actual ability to conduct specific projects

during a specific period of time will be frustrated by [the statute's] enforcement."

522 F.3d 1153, 1166 (11th Cir. 2008).  Similarly, in *Common Cause/Georgia v.*

*Billups*, the NAACP established that "it will divert resources from its regular

activities" by submitting testimony about the specific number of planned projects

and information about expenses.  554 F.3d 1340, 1350 (11th Cir. 2009).

Here, NSBA states that "many . . . of [its] members are not aware of the CTA

or its reporting requirements,"[3] and so NSBA "will need to engage in a significant

and sustained education and awareness campaign around the CTA."  McCracken

Decl. ¶ 12.  But as noted above, educating members is a "regular activit[y]" of

---

[3] This assertion is not readily reconciled with NSBA's claim that small-business leaders voted "the CTA requirements . . . as the Number 5 priority."  McCracken Decl. ¶ 10.

NSBA, *Billups*, 554 F.3d at 1350, and Plaintiffs do not specify why NSBA must "expend many more hours than it otherwise would have[,]" *Browning*, 522 F.3d at 1166, following a change in policy affecting small businesses, *see* McCracken Decl. ¶ 12 (failing to explain, for example, why NSBA cannot notify members of the CTA's reporting requirements by sending an email to all its members, posting a training video on its website that could answer anticipated questions, or referring members to FinCEN's published materials).[4]  NSBA also asserts that it will have "fewer opportunities . . . to educate and train member companies on other topics," but does not identify a period of time for these projects, quantify "fewer," or discuss why NSBA cannot accomplish its education and training goals through the opportunities it expects to have.  *Id.*; *see Viasat, Inc. v. FCC*, 47 F.4th 769, 781 (D.C. Cir. 2022); *Keyhanpoor v. Blinken*, ---F. Supp. 3d---, 2022 WL 4534629, at *3 (D.D.C. Sept. 28, 2022).  Additionally, NSBA indicates that the diversion caused by the "education and awareness campaign" will commence "[o]nce the CTA and its implementing regulations come into effect," but does not detail why it must wait until January 1, 2024, to begin discussing the CTA's requirements with its members. McCracken Decl. ¶ 12; *cf. Equal. Fla. v. Fla. State Bd. of Educ.*, No. 4:22-cv-134,

---

[4] Whether NSBA members will in fact turn to NSBA for information about the CTA is not addressed by Plaintiffs' declaration, *see* McCracken Decl. ¶ 12, and is an open question given that NSBA is already providing plainly inaccurate information about the statute, *see* NSBA, The Corporate Transparency Act, https://perma.cc/EZ45-K7AW ("Failure of a small business to comply—intentional or not—could result in up to $10,000 in fines and up to two years in prison."); 31 U.S.C. § 5336(h) (limiting penalties to willful reporting violations).

2022 WL 19263602, at *6 (N.D. Fla. Sept. 29, 2022) (plaintiffs could not demonstrate organizational standing based on their "vague or speculative" allegations), *appeal filed*, *M.A. v. Fla. State Bd. of Educ.*, No. 23-11016 (11th Cir. Mar. 29, 2023).  And unlike in *Browning* and *Billups*, here the agency tasked with administering the challenged statute is conducting the very outreach and education efforts that NSBA has inexplicably decided to delay.  31 U.S.C. § 5336(g); 87 Fed. Reg. 59,498, 59,546-48, 59,584 (Sept. 30, 2022); *cf. Cousins v. Sch. Bd. of Orange Cnty.*, ---F. Supp. 3d---, 2022 WL 18299839, at *5 (M.D. Fla. Oct. 20, 2022).

Nor have Plaintiffs demonstrated that NSBA has associational standing.  To proceed on that theory, NSBA "must make specific allegations establishing that at least one identified member has suffered or will suffer harm," and courts "cannot accept an organization's self-descriptions of its membership regardless of whether it is challenged."  *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1203 (11th Cir. 2018) (cleaned up and quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 498-99 (2009)).  Plaintiffs, who must establish standing at this juncture through evidence and not mere allegations, *id.* at 1201, fail to identify any NSBA member other than Mr. Winkles, who lacks standing for the reasons previously discussed.  And their reference to 16 members in this District, McCracken Decl. ¶ 11, is inadequate, not only because those members remain unidentified, but also because only some of them are allegedly subject to the CTA, *id.*, and there is no evidence that these members have not previously disclosed the information to be reported, Defs.' Br.

6

Ex. A, Att. 56 (statement by NSBA that the reporting requirement concerns "information [that] is already collected"); *see Jacobson*, 974 F.3d at 1249 (no associational standing where organization "failed to identify any of its members, much less one who will be injured by the ballot statute").

Plaintiffs' remaining standing arguments are unpersuasive.  First, they challenge the CTA's provisions concerning applicants (not merely beneficial owners) because "NSBA's 'members frequently file to form new entities[,]'" "[o]thers . . . intend to file applications[,]" and Mr. Winkles "anticipate[s] forming other Alabama entities over the next few years." Pls.' Opp. at 12 (citations omitted). These vague assertions and "'some day' intentions" are inadequate to carry Plaintiffs' burden. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 (1992).[5]  Plaintiffs also suggest they have standing based on potential compliance costs.  Winkles Decl. ¶ 10; Pls.' Opp. to Br. of Amici at 14, ECF No. 36.  But this assertion "rests solely on a conclusory, vague and unsupported assertion of cost increases" for Mr. Winkles and unspecified NSBA members, which does not suffice for Article III.  *Interstate Nat. Gas Ass'n of Am. v. FERC*, 285 F.3d 18, 46 (D.C. Cir. 2002); *see Aaron Priv. Clinic Mgmt. LLC v. Berry*, 912 F.3d 1330, 1338 (11th Cir. 2019).  Finally, Plaintiffs claim that "[t]he Government does not challenge [their] standing to bring their claim that Congress lacks constitutional power to enact the CTA[.]" Pls.' Opp. at 12.  That

---

[5] Plaintiffs do not dispute that they lack standing to assert the rights of entities that do not engage in commerce, Defs.' Br. at 30, or that they lack standing to challenge § 5336(f), *id.* at 37-38.

is simply incorrect.  Defs.' Br. at 17-25.  Further, Plaintiffs cannot rely on *Bond v. United States*, Pls.' MSJ at 12-13, as that case does not alter the requirement that all plaintiffs, including those asserting a Tenth Amendment claim, demonstrate a cognizable injury, 564 U.S. 211, 225 (2011).

## II.     The CTA is Authorized by Congress's Article I Powers.[6]

### A.     Foreign Affairs and National Security Powers

Plaintiffs contend that "[i]t is unclear how the Government compelled disclosure of the personal information of millions of Americans who form domestic entities without any foreign connections could even conceivably fall[] within a '*foreign*' affairs power."  Pls.' Opp. at 15.  But the undisputed facts establish that foreign individuals and entities often use U.S. shell companies to facilitate illicit activity, including human and drug trafficking, terrorist financing, sanctions evasion, and foreign corruption, thereby harming the national security interests of the United States and its allies.  Pub. L. 116-283 § 6402, 134 Stat. 3388, 4604-05 (Jan. 1, 2021); 87 Fed. Reg. at 59,498-507, 59,547, 59,579; 166 Cong. Rec. S7289, S7310 (Dec. 9, 2020) (statement of Sen. Brown); Ex. A, Att. 8-11, 32, 35-38.  The undisputed facts also establish that, in the view of the political branches, the lack of beneficial ownership information jeopardizes the country's foreign policy interests, particularly with respect to complying with FATF standards.  Pub. L. 116-283

---

[6] Plaintiffs half-heartedly argue that, "in practical terms," the CTA is a federal incorporation law. Pls.' Opp. at 14 n.4.  Not so, Defs.' Br. at 11, 34, 37, as Plaintiffs earlier admitted, Pls.' MSJ at 21.

§ 6402(5)(E), 134 Stat. at 4604; H.R. Rep. No. 116-227, at 11 (2009); 166 Cong. Rec. at S7310 (statement of Sen. Brown); 87 Fed. Reg. at 59,503, 59,506; Ex. A, Att. 26, 48, 78, 83.  In light of this evidence, the "strong presumption" that the CTA is constitutional, *United States v. Ruggiero*, 791 F.3d 1281, 1284 (11th Cir. 2015), and the fact that Plaintiffs must "establish that no set of circumstances exists under which the Act would be valid[,]" *Salerno*, 481 U.S. at 745, Plaintiffs' theorizing is inadequate to cast doubt on the CTA's constitutionality.

Plaintiffs fare no better in asserting that Defendants improperly invoked the Necessary and Proper Clause because the government's national security and foreign affairs powers are not expressly enumerated in Article I.  Pls.' MSJ at 15-18.  "[A]n extensive list of constitutional provisions [] entrusted foreign affairs and national security powers to the political branches[.]"  *Bancoult v. McNamara*, 445 F.3d 427, 433 (D.C. Cir. 2006).[7]  Further, the Necessary and Proper Clause extends not only to Article I, § 8 powers, but to "all other Powers vested by th[e] Constitution in the Government of the United States, or in any Department or Officer thereof."  U.S. Const. art. I, § 8, cl. 18; *United States v. Lue*, 134 F.3d 79, 82 (2d Cir. 1998).  And the Supreme Court rejected an argument similar to Plaintiffs' nearly 90 years ago: "The broad statement that the federal government can exercise no powers except

---

[7] More broadly, the Constitution commits "the entire control of international relations" and national security to the political branches. *Fong Yue Ting v. United States*, 149 U.S. 698, 705 (1893); *see, e.g.*, U.S. Const. art. I, § 8, cls. 1, 3, 9-16; art. II, §§ 2-3; *see also United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 319, 320 (1936).

those specifically enumerated in the Constitution, and such implied powers as are necessary and proper to carry into effect the enumerated powers, is categorically true only in respect of our internal affairs." *Curtiss-Wright*, 299 U.S. at 315-16.

Finally, the Court should reject Plaintiffs' argument that the CTA does not further the government's foreign policy interests. Pls.' Opp. to Br. of Amici at 9-10. Plaintiffs notably rely on a version of the FATF standards that could not have been considered by Congress. *See id.* (quoting "alternative mechanism" language in 2023 FATF update); *compare* Ex. A, Att. 16 at 22 (2020 version). Moreover, although Plaintiffs contend that post-CTA FATF standards do not necessarily require countries to create centralized registries of beneficial ownership information, Plaintiffs acknowledge that such registries are an "option" countries may adopt, Pls.' Opp. to Br. of Amici at 9-10, to ensure that beneficial ownership information "can be obtained or accessed rapidly and efficiently by competent authorities," as the 2023 FATF standards recommend, https://perma.cc/H5UA-7NAV, at 22. The political branches reasonably determined that U.S. compliance with its international obligations is best achieved by requiring information to be reported to FinCEN, Defs.' Br. at 6, and Plaintiffs cite no authority for the proposition that their foreign policy views should outweigh those of Congress and the Executive Branch.

### B.   Commerce Clause

Plaintiffs describe the CTA as "transformative" and caution that the Court "should tread carefully when assessing Congress's power under the Commerce

Clause." Pls.' Opp. at 24. But the CTA is entitled to a "strong presumption" of constitutionality, *Ruggiero*, 791 F.3d at 1284, and this is hardly the first time Congress has required entities to submit information to the government, even "absent any suspicion of wrongdoing or sense of the entity's activities," Pls.' Opp. at 24, to further the public good, *see, e.g.*, *Helvering v. Mitchell*, 303 U.S. 391, 399 (1938); *Elec. Bond & Share Co. v. SEC*, 303 U.S. 419, 437 (1938). Plaintiffs' other Commerce Clause arguments are meritless.

***Substantial Effect on Interstate and Foreign Commerce.*** Defendants have not argued, as Plaintiffs suggest, that "entity formation itself is a commercial activity that 'substantially affects' interstate commerce[.]" Pls.' Opp. at 25; *see id.* at 30.[8] The CTA is authorized based on the undisputed facts that certain entities, which have availed themselves of States' incorporation laws, use the channels of commerce, and their anonymous operations substantially affect interstate and foreign commerce. 31 U.S.C. § 5336(b); Pub. L. 116-283 §§ 6002, 6402, 134 Stat. at 4547, 4604; 87 Fed. Reg. at 59,498-506; 166 Cong. Rec. at S7310 (statement of Sen. Brown); 166 Cong. Rec. at H6932 (statement of Rep. McHenry); Ex. A, Att. 8-10, 20, 29, 32, 35-39, 76; *see Ala.-Tombigbee Rivers Coal. v. Kempthorne*, 477 F.3d 1250, 1273 (11th Cir. 2007) (upholding "a general regulatory statute bearing a substantial relation to

---

[8] Plaintiffs similarly argue that "the mere act of forming an entity is not an 'economic activity,'" Pls.' Opp. at 30, but the CTA does not regulate that mere act, and in any event, Congress has "substantial leeway to regulate purely intrastate activity (whether economic or not) that it deems to have the capability, in the aggregate, of frustrating the broader regulation of interstate economic activity[,]" *United States v. Maxwell*, 446 F.3d 1210, 1215 (11th Cir. 2006).

commerce"). It is the activities of these entities, not the mere fact that they submitted documents to a Secretary of State, that implicates the Commerce Clause and permits Congress to exercise its authority. *Cf. N. Am. Co. v. SEC*, 327 U.S. 686, 706 (1946).

Nor can Plaintiffs persuasively argue that the substantial-effects test applies only where Congress is regulating production of "a fungible commodity" such as wheat or marijuana. Pls.' Opp. at 30 (attempting to distinguish *Gonzales v. Raich*, 545 U.S. 1 (2005)). As the Eleventh Circuit has explained, *Raich* "was not intended to limit to the sale of fungible goods a doctrine that had already been applied to discriminatory accommodations, to fair labor standards, to extortionate credit transactions, and to mining safety standards." *Ala.-Tombigbee Rivers Coal.*, 477 F.3d at 1276-77; *see also, e.g.*, *Maxwell*, 446 F.3d at 1216; *Groome Res. Ltd., LLC v. Par. of Jefferson*, 234 F.3d 192, 208-09 (5th Cir. 2000). Moreover, Plaintiffs' unsupported argument that "the CTA is not a 'comprehensive framework,'" Pls.' Opp. at 30, is without basis in fact or law. Pub. L. 116-283 § 6002, 6402, 134 Stat. 4547, 4604 (CTA is part of Anti-Money Laundering Act of 2020, enacted in part "to modernize anti-money laundering and countering the financing of terrorism laws."); 166 Cong. Rec. at S7309 (statement of Sen. Brown).

***Channels of, and Things in, Interstate and Foreign Commerce.*** Similarly, Defendants have not claimed that "a State entity is a 'thing' in interstate commerce the instant it is formed[.]" Pls.' Opp. at 25. To the contrary, Defendants have explained, Defs.' Br. at 33, and Plaintiffs do not deny, Pls.' Opp. at 27, 30, that

entities the CTA regulates frequently use the channels of commerce.  Accordingly, Congress can impose conditions on that use, *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 99-100 (1946); *Cal. Bankers Ass'n v. Shultz*, 416 U.S. 21, 46 (1974), including imposing disclosure obligations.

Plaintiffs misunderstand the import of *Shultz*.  They erroneously compare State entities to negotiable instruments, rather than to the banks challenging the BSA provisions in that case.  Pls.' Opp. at 27-28.  Plaintiffs also assert that "[w]hat *Shultz* does *not* stand for is the idea that Congress has Commerce Clause power to compel disclosure based solely on the fact of State-law entity formation."  *Id.* at 28.  That framing is incorrect for the reasons previously explained.  Nor can Plaintiffs distinguish *Shultz* on the ground that, under the BSA, records maintained by banks were not "made automatically available for law enforcement purposes (but could) only be obtained through existing legal process."  *Id.* at 27 (quoting 416 U.S. at 27). First, Plaintiffs fail to explain how that aspect of the BSA bears on Congress's Article I authority here.  *See id.*  Second, the CTA similarly does not "automatically" make information available for law enforcement; instead, a requesting agency must follow "appropriate protocols," 31 U.S.C. § 5336(c)(2)(B)(i), based on regulations to be promulgated by the Secretary of the Treasury, *id.* § 5336(c)(3).

Finally, *NFIB v. Sebelius*, cited in Pls.' Opp. at 30, is inapposite.  As Plaintiffs note, *id.*, that case concerned the regulation of "individuals not currently engaged in commerce[,]" 567 U.S. 519, 557 (2012).  Here, the legislative and regulatory

13

records, as well as Plaintiffs' submissions, confirm that the CTA regulates entities engaged in commerce. *E.g.*, Pub. L. 116-283 § 6402, 134 Stat. at 4604; 87 Fed. Reg. at 59,498-500; McCracken Decl. ¶ 4 (NSBA members "come from every sector of the U.S. economy, including manufacturing, retail, food service, and provisional services."); Compl. ¶ 12; *see NFIB*, 567 U.S. at 557 (noting that Supreme Court precedent concerned "preexisting economic activity" and not "prophesied future activity").[9]  Further, the CTA compels disclosure only from those who have filed certain documents required by a State.  "In that sense, these individuals have 'opted in' to the group of persons whose activities are regulated by [the statute], unlike the uninsured in *NFIB*."  *United States v. Rivers*, 588 F. App'x 905, 909 (11th Cir. 2014).

### C.    Taxing Authority

Plaintiffs acknowledge that "use and access of the FinCEN database [for] tax collection purposes[] might be justified under the Necessary and Proper Clause as rationally related to the Taxing Power."  Pls.' Opp. at 21.  Having admitted that the CTA may properly be applied in at least some circumstances, their facial challenge to the entire statute necessarily fails.  *Salerno*, 481 U.S. at 745.  Moreover, Congress enacted the CTA in part to ensure that taxable income is properly reported.  31 U.S.C. § 5336(c)(5)(B).   The relationship between registration or disclosure

---

[9] The possibility that some State-chartered corporations do not engage in commerce "is of no consequence" to the Commerce Clause analysis.  *Ala.-Tombigbee Rivers Coal.*, 477 F.3d at 1271-72; *see* Defs.' Br. at 31-32.  Plaintiffs offer no response to this point.

provisions and the government's taxing authority is well recognized.  *E.g.*, *Helvering*, 303 U.S. at 399; *United States v. Kramer*, No. 07-cr-80136, 2008 WL 313827, at *3 (S.D. Fla. Feb. 4, 2008).  Additionally, it is irrelevant that the CTA is "designed to do much more than tax or prevent tax evasion."  Pls.' Opp. at 21.  "The act may not be declared unconstitutional because its effect may be to accomplish another purpose as well as the raising of revenue."  *United States v. Doremus*, 249 U.S. 86, 94 (1919); *accord Sonzinsky v. United States*, 300 U.S. 506, 513 (1937).

## III.   The CTA Does Not Violate Plaintiffs' Constitutional Rights.

### A.   The CTA Does Not Invade Plaintiffs' Right to Privacy.

#### 1.   Plaintiffs' Fourth Amendment Claim Fails.

Plaintiffs primarily respond to Defendants' arguments by reframing their privacy interest as "not mere[ly] compelled disclosure," but "compelled disclosure to FinCEN's database," and they assert that previous disclosure of reporting information has no bearing on that privacy interest.  Pls.' Opp. at 32-34.  But Plaintiffs ignore a basic prerequisite of Fourth Amendment protection: "a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties . . . even if the information is revealed on the assumption that it will be used only for a limited purpose."  *Carpenter v. United States*, 138 S. Ct. 2206, 2216 (2018) (citations omitted); *see also Katz v. United States*, 389 U.S. 347, 351 (1967).  Plaintiffs cannot square their position—that voluntary disclosure for purposes such as State incorporation or social media networking has no effect on Fourth

Amendment protection—with the well-settled third-party doctrine.   On the evidentiary record before the Court, Plaintiffs have not carried their burden of establishing a Fourth Amendment privacy interest.  Nor have Plaintiffs illustrated that society would recognize such an expansive expectation of privacy.  *See, e.g.*, *United States v. Miller*, 425 U.S. 435, 442-43 (1976) (statute reflects society's expectations); *Chaney v. Fayette Cnty. Pub. Sch. Dist.*, 977 F. Supp. 2d 1308, 1315-16 (N.D. Ga. 2013) (no legitimate expectation of privacy in photograph the plaintiff voluntarily shared with Facebook friends and friends of friends).

Plaintiffs' second argument—that the CTA's reporting requirement introduces a new technology that merits extending Fourth Amendment protection—is similarly unpersuasive.  *See* Pls.' Opp. at 34-35.  Plaintiffs attempt to analogize to *Carpenter*, which considered whether cell-site location information ("CSLI") is protected by the Fourth Amendment.  138 S. Ct. 2206.  Eleventh Circuit precedent, however, undercuts Plaintiffs' argument.  *United States v. Trader*, 981 F.3d 961, 967-68 (11th Cir. 2020) ("The third-party doctrine controls here because *Carpenter*'s 'narrow' exception . . . applies only to some [CSLI], not to ordinary business records like email addresses and internet protocol addresses.").  Further, unlike the "deeply revealing nature of CSLI" with "its depth, breadth, and comprehensive reach," *Carpenter*, 138 S. Ct. at 2223, the CTA requires reporting companies to provide a few discrete pieces of basic information about beneficial owners and applicants, and a database storing that information is not akin to the

"seismic shift[]" represented by the constant and indefinite location tracking of all people using cellphones, *id.* at 2219. The holding in *Carpenter* also turned on the lack of "voluntariness of the exposure [of CSLI] to third parties," *United States v. Gayden*, 977 F.3d 1146, 1152 (11th Cir. 2020), but it remains undisputed that beneficial ownership information is often voluntarily disclosed in other contexts. Thus, the reasoning of *Carpenter* does not apply here.

Lastly, even if a privacy interest were at stake, Plaintiffs do not even attempt to argue that such an interest outweighs the compelling government interests here, and their claim fails on that basis alone. Defs.' Br. at 43-45.

### 2. Plaintiffs' Fifth Amendment Claim Fails.

Plaintiffs' Fifth Amendment claim fares no better. Plaintiffs have brought a facial challenge, yet have not even demonstrated that Mr. Winkles, NSBA, or any NSBA member-company risks self-incrimination by providing CTA reporting disclosures, let alone that reporting poses self-incrimination risks to entities or individuals in all or most cases. *Battle v. Barton*, 970 F.2d 779, 781 (11th Cir. 1992); *Knight v. Miami-Dade Cnty.*, 856 F.3d 795, 823 (11th Cir. 2017). And, if anything, the case on which Plaintiffs rely, *Bellis v. United States*, 417 U.S. 85, 92-101 (1974), demonstrates that, even in the context of an as-applied challenge, any assertion of the Fifth Amendment privilege in an entity-reporting context would be extremely limited and fact-specific, and *Bellis* lends no support to Plaintiffs' facial challenge.

17

Plaintiffs also inaccurately contend that because the CTA requires the reporting of personal information, and because its penalties apply exclusively to natural persons, the statute implicates the Fifth Amendment rights of such individuals. *See* Pls.' Opp. at 35-37. Not so. The CTA requires reporting companies to transmit beneficial owner information to FinCEN, and these companies have no right against self-incrimination. *Schultz*, 416 U.S. at 55. That natural (and legal) persons may incur consequences because of a company's reporting does not change that it is *the company* that provides the information. *Couch v. United States*, 409 U.S. 322, 328 (1973) ("A party is privileged from producing the evidence but not from its production. . . . It is extortion of information from the accused himself that offends our sense of justice."); *see Bellis*, 417 U.S. at 89-90.

### B.     The CTA Accords with the First Amendment.

Plaintiffs next contend that the CTA's reporting requirements generally abridge their First Amendment rights. As an initial matter, Plaintiffs' refusal to identify the First Amendment doctrine under which they are proceeding falls short of the federal pleading standard, let alone what must be shown at summary judgment. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Plaintiffs also rely on *Lady J. Lingerie, Inc. v. City of Jacksonville*, 176 F.3d 1358 (11th Cir. 1999), a case considering the constitutionality of various city ordinances regarding adult entertainment establishments. *Lady J.*, however, is distinguishable on two counts. First, the ordinance at issue applied to lingerie shops

18

showcasing nude dancing, *see id.* at 1360—a form of expression implicating First Amendment protection, *see, e.g.*, *Cheshire Bridge Holdings, LLC v. City of Atlanta*, 15 F.4th 1362, 1375 (11th Cir. 2021).   By contrast, the CTA applies simply to reporting companies, and Plaintiffs' own submissions demonstrate that the CTA regulates entities primarily engaged in commercial, not expressive, conduct.   *See* McCracken Decl. ¶ 4; Compl. ¶¶ 12, 14; *see also* Defs.' Br. at 54 n.14, 56 n.15. Second, *Lady J.* found part of the ordinance unconstitutional because it lacked a "'relevant correlation' or a 'substantial relation'" between its requirements and the "harmful secondary effects of adult entertainment establishments," 176 F.3d at 1366, but Defendants have explained at length the correlation between obtaining beneficial ownership information and combatting financial crimes, Defs.' Br. at 51; *see, e.g.*, Ex. A, Att. 25 at 7 ("If beneficial ownership information were required at company formation, it would be harder and more costly for criminals and kleptocrats to hide their criminality and for foreign states to avoid detection and scrutiny.").

Lastly, Plaintiffs' points regarding the CTA's definition of substantial control and the burdens of noncompliance are inconsequential as the government's compelling interests substantially outweigh these concerns.[10]

---

[10] Plaintiffs contend that Congress should amend the CDD Rule's definition of beneficial owner, rather than adopt the CTA's broader definition.  Pls.' Opp. to Br. of Amici at 7-8.  The CTA reflects a considered and reasonable determination by Congress to depart from the CDD Rule in certain respects, *see, e.g.*, 87 Fed. Reg. at 59,558-59; Defs.' Br. at 52-53, and the Court must defer to that policy choice, *cf. Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010); *Savage Servs. Corp. v. United States*, 522 F. Supp. 3d 1114, 1125 (S.D. Ala. 2021).  Unlike the CDD Rule, for example,

### C.    The CTA Accords with the Due Process Clause.

Plaintiffs do not contest that the CTA's reporting requirements clearly apply to Mr. Winkles; therefore, he lacks standing to challenge the statute's hypothetical applications to others as vague.  *See* Pls.' Opp. at 39-40; *Parker v. Levy*, 417 U.S. 733, 756 (1974).  And, as NSBA has not asserted it is subject to the reporting requirement, and Mr. Winkles is the only member it has put forth, it also lacks standing.  *See Ga. Republican Party*, 888 F.3d at 1204.

The CTA is sufficiently clear, and Plaintiffs' only response to Defendants' arguments is to cite additional hypothetical applications of the CTA's reporting requirements to businesses not before the Court.  Pls.' Opp. at 39-40.  Plaintiffs' examples are not relevant to their facial challenge, and Plaintiffs' hypothetical concerns about family businesses fail to appreciate that only those who willfully fail to report beneficial ownership information to FinCEN may be penalized.  *Eknes-Tucker v. Marshall*, 603 F. Supp. 3d 1131, 1148 (M.D. Ala. 2022).

### CONCLUSION

---

the CTA requires beneficial ownership information to be reported to the government, making it available to law enforcement to "provide law enforcement or others the ability to quickly and effectively follow the money."  87 Fed. Reg. at 59,505.  The CTA also requires beneficial ownership information to be collected at the time of an entity's formation and updated when it changes, rather than only when the entity opens an account with a covered financial institution. Plaintiffs' arguments, Pls.' Opp. to Br. of Amici at 8, ignore the fact that this requirement will provide law enforcement with more comprehensive and timely insight about entities' beneficial owners, 87 Fed. Reg. at 59,502.  Plaintiffs also incorrectly suggest that foreign entities without bank accounts in the United States will not be covered by the CTA.  Pls.' Opp. to Br. of Amici at 8.  In fact, subject to certain exceptions, foreign entities registered to do business in United States are "reporting companies" under the CTA regardless of whether they have a U.S. bank account, 31 U.S.C. § 3553(a)(11)(A)(ii), which, again, will provide useful information to law enforcement.

The Court should grant Defendants' motion to dismiss or, in the alternative, for summary judgment.

Dated:  May 25, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Branch Director

DIANE KELLEHER
Assistant Branch Director

  _/s/ Stuart J. Robinson_____
STUART J. ROBINSON
Senior Counsel
TAYLOR N. PITZ
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
450 Golden Gate Ave., Suite 7-5395
San Francisco, CA 94102
Tel: (415) 436-6635
Fax: (415) 436-6632
Email: stuart.j.robinson@usdoj.gov

*Counsel for Defendants*